*R. L. & H. C. Cox* and *E. W. Roberts,* contra.

---

## JAMES *v.* THE STATE.

1. The ground of the motion for a new trial complaining of the refusal of the court to continue the case does not require a reversal.   Movant contends that the court erred in refusing to exercise a discretion on the motion to continue.   While all motions to continue are addressed to the sound legal discretion of the court, it appears from a consideration of all that the court said and ruled that the motion was overruled because there was no legal ground for a continuance, and for that reason the court considered that there was no basis for a continuance based on sound legal discretion.
2. The court did not err in failing to instruct the jury on the law of involuntary manslaughter.   Conceding that a proper written request based on the defendant's statement would have required such instruction, in the absence of such request the mere failure to so charge was not error.
3. The verdict is supported by evidence.

No. 4305.   JULY 15, 1924.

Murder.   Before Judge Strange.   Screven superior court.   March 21, 1924.

*M. R. Lufburrow* and *E. K. Overstreet Jr.,* for plaintiff in error.

*George M. Napier, attorney-general, A. S. Anderson, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

GILBERT, J.   1.   One ground of the motion for a new trial is based on the refusal of the court to continue the case.   The ground of the motion is stated as follows:   "The court, in overruling the defendant's motion for continuance on the ground of the absence of a material witness, stated that he overruled the motion because he had no discretion in the matter; and it was error to overrule the motion on this ground, because, as a matter of fact, it was in the discretion of the court to sustain or overrule the motion for continuance."   The evidence introduced on the motion to continue is attached as an exhibit to the motion for a new trial.   On the motion to continue the accused was examined, and on the question of what he expected to prove by the absent witness the following colloquy took place:   "Q.   What can you prove by Frankie Waters?   A.   I intend to prove by her that Flanders

Dobson told me that she told him that Freelove told her that me and her was tussling over the pistol." On cross-examination the accused further stated: "She is going to swear Flanders Dobson told me. Judge Boykin: I object to anything Flanders told him. Q. State what you expect to prove by her? A. That Flanders told me that she told him. Q. Don't state what Flanders said. A. Well that me and her was tussling over the pistol, that Frankie Waters told him that me and Freelove was tussling over the pistol when it happened; that I have been in jail ever since I was arrested and ever since the third evening in May." From the above-quoted evidence it does not clearly appear that the evidence could legally have been admitted had the witness, Frankie Waters, been present at the trial. It seems at most that the witness was prepared to swear that another person, Flanders Dobson, told the accused that the deceased said that she came to her death because of a tussle over a pistol with the accused. Before this court is authorized to reverse the trial judge for refusing to continue the case, his error should be made plain and manifest. The trial court is in much better position than this court to understand the real facts and surrounding circumstances in connection with the motion to continue the case. Movant's sole criticism is that the court refused to exercise the discretion allowed by law on the motion for a continuance. It is true that "All applications for continuances are addressed to the sound legal discretion of the court, and, if not expressly provided for, shall be granted or refused, as the ends of justice may require." Penal Code (1910), § 992. The record of what occurred, attached to the motion for a new trial, shows that after hearing evidence of the defendant the court said: "I have no discretion in the matter; as I understand it the witness is out of the State, has not been subpœnaed, and I have no authority to bring her here, and for that reason I decline to continue the case." It thus appears that while the court stated that he had no discretion in the matter, as he understood the witness was out of the State and had not been subpœnaed and that the court had no authority to bring the witness to court, he finally said: "I overrule the motion, because it is not a legal showing for a continuance." We think from what appears above that the court meant that there was no legal showing for a continuance; that there was no ground for a continuance

based on the exercise of a sound and legal discretion. This court would not be authorized to reverse the judgment of the trial court in overruling a motion for a continuance where it appears that a legal showing was not made, notwithstanding the fact that in overruling the motion the court at the same time said that he had no discretion in the matter. Plaintiff in error cites *Jones* v. *State,* 125 *Ga.* 307 (54 S. E. 122). The ruling which we now make is in full accord with that case. Movant also cites *Brown* v. *State,* 120 *Ga.* 145 (47 S. E. 543). In that case it was said: "While motions for continuance and postponement are addressed to the sound discretion of the trial court, that discretion should be exercised in a reasonable manner." There the motion was to postpone for one day, not to continue, and was based on several grounds, to wit, that the accused had been arrested in another county, brought to the county where he was tried, and lodged in jail the night before his case was called for trial; that counsel was appointed for him when the case was called; that his witnesses lived in another county and no opportunity had been afforded him to subpœna them; that the law under which he was tried was a recent enactment; that his attorney had had neither the time nor the opportunity to prepare his defense or familiarize himself with the statute. This court properly held, that the motion to continue the case for one day should have been granted. Other cases cited may be similarly differentiated.

2. Counsel for movant concedes that in the absence of a written request the court is not bound to charge on a theory of defense raised and supported solely by the defendant's statement. They insist, however, that the theory of involuntary manslaughter was involved in the case, because the statement of the accused claiming that he killed the deceased in a tussle over a pistol was corroborated by two witnesses for the State, and that therefore the court should have submitted that issue to the jury even without a request. If by this contention it is meant that the corroborating evidence must be to the effect stated by the accused, that the homicide was due to a tussle over a pistol, we agree with counsel that under the law the court should have charged involuntary manslaughter. What was the corroboration by the witnesses? The accused, in his statement before the jury, gave a history of his association with the deceased for some time prior to and in-

cluding the day of the homicide. From his statement it appeared that he had a wife living elsewhere, and that he had been on somewhat intimate terms with the deceased. On the day of the homicide that they had gone to church, and during the day the deceased had gone off a short distance with another person for some purpose. The deceased and another woman had requested a ride in an automobile back to the church. On her way back she encountered the accused. Referring to the deceased the accused said: "And she says, 'Where you going?' And I says, 'I am going up to old man Hall's,' and she says, 'For what?' And I says, 'I am just going up there.' She says, 'Come on back to church.' I says, 'No, Freelove, I promised Mr. Phillip Hall that the next time I was coming to see him.' And she says, 'Come on and go back now.' And I says, 'No, you go on to church. I will be there directly.' And she says, 'Where is the pistol?' How come I to have the pistol, when she come into the road to me that day she give me the pistol to carry with me. I can prove that by Levi, that one night before some nights before he got after me to go with him down to Dover to meet Mr. Mallory, and after me and Levi got in the car I want to bring this up. I can prove it by him that Freelove did have this pistol. He said to me, he says, 'You got your pistol?' And I says, 'No, Levi,' I says, 'I haven't got my pistol. Freelove has got my pistol, and I can't get it from her;' and when she come out in the road that day, after me and her got down the road a piece she give me the pistol. I didn't leave home with the pistol at all. That is how come me with the pistol. When she got out of the car and come to me, when she asked me about going back to church, I said, 'No, Freelove, you go on back to the church, and I will be back there directly.' Then she said, 'No, you come on back now.' And I says, 'No.' She says, 'You come on; you're to see some other woman another;' and I says, 'No,' and she says, 'Where is the pistol?' And I says, 'I have got it.' And she says, 'Let me see it.' And I taken the pistol out and showed it to her. And that time she says 'Give it to me. I am going up to the church.' I says, 'Not in your condition; you ain't got no business with it.' And in that time me and her got to tussling over the pistol, and while me and her was tussling over the pistol the pistol went off and

fired, and when it fired I dropped it on the ground. And I says, 'My Lord, what in the world is the matter?'"

The testimony claimed by movant to corroborate the statement of the accused is as follows: Earl Bazemore, a witness for the State, was on the road at the time, about three hundred yards away, when he heard the shooting. On arrival at the scene he found the woman lying across the road "and Cuyler down over her, and I said, 'Cuyler, what is the trouble?' And Cuyler said, 'I have done shot this woman,' and I says, 'Well now here, Cuyler, give me your pistol.' He said, no, the crowd was coming then, and he says, 'I might have to shoot some more of them,' and he kept calling her and calling her, five or six times, 'Freelove, Freelove, Freelove, I would not have shot you for nothing in the world.' . . When I told Cuyler to give me the pistol Cuyler said he might have to shoot some more of them, they were coming after him. He didn't say anything to me about an accident." On cross-examination the witness reiterated the facts already testified in regard to the show of grief and regret by the accused. W. D. Booker, sworn for the State, testified, that he was with witness Bazemore, "and we walked up and we saw Cuyler and Freelove, and I said, 'Cuyler, what in the world has happened?' and he didn't answer. He never did answer. And I said to Earl, 'Earl, we haven't got any means or weapons to take this fellow, but if you will hunt me a stick we will take him anyhow.' . . We asked him to give up the pistol or leave, and he said he wouldn't. He said, 'I might have to shoot more of them.' . . When Levi [the brother of the deceased] walked up the girl was lying there, and it seems Levi was just horrified. And he said to Levi, he said, 'I shot her. I am sorry, but I shot her,' just that way to Levi; he didn't make any threats then about what he would do; he didn't say any more to Levi, . . but he told him that he shot her. He says, 'I shot her.' He says, 'Levi, I shot her.' He says, 'I am sorry,' someway, that way. He didn't say he did it accidentally; there wasn't no accident about it." On cross-examination he further testified: "He was brushing her face, and lamenting how sorry he was that he had killed her. He just says· to Freelove, 'I would not have shot you for nothing in the world. God knows it.' He did not help to put her in the car, not that I saw. He leaned upon the car when she got in; the last I saw of him he was leaning on it on the back

door, resting on his arm, looking at her. As to whether he looked like he was grieving, he looked like he was crazy. Looked like he had just realized what had happened."

Our attention is called to the case of *Boyd* v. *State,* 136 *Ga.* 340 (71 S. E. 416). In that case the State clearly introduced the issue of whether the deceased was killed in a tussle over a gun or not. The facts of that case are unlike the facts of the present case. In this case the statement of the accused clearly raises that issue; and had a timely written request been presented, the court doubtless would have instructed the jury accordingly. Counsel frankly admit that they are familiar with this principle of law, but notwithstanding they did not present such a request. Had they thought at the time that it was to the best interest of the accused, they of course would have presented such a request. Such a course would have assisted the trial judge in ascertaining the contentions of the accused. "The object of all legal investigation is the discovery of truth." The practice of disclosing to the court by proper request contentions when they are not manifest should be encouraged. Unlike civil cases, the defendant in criminal cases by his plea of not guilty does not in any way disclose the nature of his defense. The evidence of the two witnesses mentioned by movant as corroborating the statement of the accused in regard to the accidental killing, in our opinion, fails to do so. Both witnesses expressly state that there was no mention of accident by the accused at the time. They do make it clear that after the mortal wound had been inflicted by the accused he expressed deep regret and grief. This is not at all inconsistent with an intentional killing. Considering the past relations of the parties and the circumstances shown by the evidence in the case, it is perfectly consistent with the theory that the accused, through motives of jealousy, deliberately stopped the automobile in which the deceased was riding on a public highway, and shot her to death at a time when she was endeavoring to assuage his angry passions. Deliberation on his part is shown by the fact that when the pistol failed to fire he continued to snap it until he had shot her, and, as one of the witnesses stated, when he was showing grief he seemed to be crazed by a sudden realization of what he had done. Under our construction of the evidence, aside from the statement, there was nothing to authorize the charge of the court

34

on the subject of involuntary manslaughter. The court submitted to the jury the issue of accidental killing, as provided in the Penal Code (1910), § 40.

*Judgment affirmed. All the Justices concur.*