## COCHRAN v. THE STATE.

1. It is not erroneous in the trial of a criminal case for the judge to charge the jury : " Where the State makes out a prima facie case, that is to say, a case where the jury would be authorized to convict if no other evidence was offered, and the defendant offers an alibi as a defense, the burden is on him to make it out by a preponderance of the evidence, that is by the greater weight of the evidence ; but the evidence offered as to alibi is to be considered along with all the other evidence, in order to determine whether the guilt of the defendant has been shown beyond a reasonable doubt."

2. The circumstance that a witness who testifies in behalf of the accused in a. criminal case is his relative, or the fact that such witness is jointly indicted with the accused for the offense for which he is on trial, may be considered by the jury in passing upon the credibility of such witness and weighing his. testimony ; and general instructions to this effect are not erroneous.

3. This court will not interfere with the exercise by the trial judge of his discretion in denying a motion for a continuance, when the facts in connection therewith, as certified by the judge, are sufficient to warrant the conclusion that the motion was not made in good faith.

4. Though the trial judge may propound to the accused irrelevant and inappropriate questions, this affords no cause for a new trial, when neither the questions nor the answers thereto were heard by any person who subsequently was selected and served as a juryman upon the trial of the accused.

5. Where the law provides for a term of a superior court to extend beyond one week, and the judge, on any day of the first week, orders that the court take. a recess until a named day in the next week, the court may lawfully assemble on that day and when assembled is in lawful session, though there be no order calling a special term or directing an adjourned term of the court to be held during that week.

6. Though the statute provides that " when a superior court is held for longer than one week, the presiding judge shall draw separate panels of petit jurors for each week of the court," yet where the judge draws jurors for a term and they appear and serve during the first week thereof, and subsequently, by direction of the court, appear for service during the next week and are duly impaneled for such service, and upon the trial of a felony case are put upon the accused as part of the array of forty-eight jurors from which the trial jury is to be selected, a challenge to the array upon the ground that these jurors. " had been summoned for the previous week and had not been resummoned for the " week when this trial occurred, did not raise the question that they had not been properly drawn to serve during the second week, and the court. committed no error in overruling it.

7. Certain written requests to charge were properly refused, because not warranted by the evidence. There was no error in failing to charge that the testimony to corroborate a confession must connect the accused with the perpetration of the crime charged. There was ample corroboration of the confession of the accused ; the testimony of the accomplice was sufficiently corroborated by evidence which connected the defendant with the perpetration of the offense charged ; the evidence as a whole fully warranted the verdict ; and. there was no error in refusing a new trial.

Argued May 20, — Decided July 17, 1901.

Indictment for murder. Before Judge Candler. Campbell superior court. March 14, 1901.

*J. F. Golightly, Claude Smith, J. B. Suttles,* and *Arnold & Arnold,* for plaintiff in error.　*J. M. Terrell, attorney-general, W. T. Kimsey, solicitor-general, L. S. Roan,* and *C. S. Reid,* contra.

FISH, J.　Shell Cochran was tried for and convicted of the crime of murder. He made a motion for a new trial, which was overruled, and he excepted.

1. One of the grounds of the motion is that the court erred in giving to the jury the charge set out in the first headnote.　It is contended that this charge was contradictory, and that the burden was not upon the defendant to establish his defense of alibi by a preponderance of the evidence.　The charge is in substantial accordance with the rule upon the subject which has been established by repeated decisions of this court.　In the case of *Harrison* v. *State,* 83 *Ga.* 129, Chief Justice Bleckley, in formulating from previous decisions the rule upon this subject which had been established in this State, said: " Touching alibi, the rule in Georgia as established by authority consists of two branches.　The first is, that, to overcome proof of guilt strong enough to exclude all reasonable doubt, the onus is on the accused to verify his alleged alibi, not beyond reasonable doubt, but to the reasonable satisfaction of the jury.　The second is, that, nevertheless, any evidence whatever of alibi is to be considered on the general case with the rest of the testimony, and if a reasonable doubt be raised by the evidence as a whole, the doubt must be given in favor of innocence."　In *Bone* v. *State,* 102 *Ga.* 387, it was held: " It is not error in the trial of a criminal case for the presiding judge to charge the jury that when the State makes out a prima facie case against the defendants, 'and the defense of alibi is relied on, then the burden of proof is on the defendants to show you by the preponderance of the evidence offered that, at the time and place in question, it was impossible for the defendants to have been there,' when immediately after such charge he instructs the jury to consider all the evidence offered, the evidence touching the alibi and all other parts of the case, with reference to determining whether the evidence offered is so strong as to convince them of the defendants' guilt beyond a reasonable doubt."　Other decisions of this court to the same effect could be cited.

2. Another ground is that " The court, in charging upon the rules of weighing evidence, and upon the credibility of witnesses, erred in charging the jury as follows: ' You will consider all the testimony of all the witnesses, taking into consideration the state of a witness's feeling towards any party to the case, his or her relationship to any party to the case, or his or her interest in the result of the case. In other words, consider is he or she interested in the result of the trial, if such is shown by the evidence. All [this] is to be considered by you in determining the credit to be given the testimony of every witness. Their manner, interest, or bias, if shown, as also the reasonableness or unreasonableness of the testimony of the witness, may be considered by the jury. The fact that a witness is jointly indicted for the same offense with the defendant, and for which the defendant is on trial, may be considered by you in fixing the credit you will give to the testimony of such witness.'" It is alleged that this charge was erroneous, because "it goes too far towards individualizing the witness, and is argumentative, and would naturally be considered by the jury as singling out those witnesses for the defendant who were relatives of the defendant," and " because such charge also went too far in pointing out to the jury to consider whether the witnesses were jointly indicted for the same offense with the defendant, and in compelling the jury to consider this as a circumstance." Three of the witnesses who testified for the defense were jointly indicted with the prisoner on trial, two of them as principals in the crime charged, and one of them as an accessory; two of these witnesses were his brothers, and other witnesses who testified in his behalf were closely related to him by blood or affinity. These were circumstances which the jury had the right to take into consideration when weighing the testimony of these respective witnesses.

Where the testimony in a case conflicts, it is the duty of the jury, if they can not reconcile it, to determine where the truth lies, and in order to do this they must take into consideration the credibility of the respective witnesses; and in passing upon the credibility of any witness they can consider any circumstance, shown by the evidence, which would naturally tend to bias or prejudice such witness in favor of the one side or the other. They can consider whether he is himself vitally interested in the result of the trial, whether he will be affected by the verdict rendered therein,

or whether the issue on trial is one of vital interest to a near relative of his. Any fact shown by the evidence, which according to human experience and observation would naturally tend to cause the witness to lean towards one side or the other, may be considered by the jury in passing upon the credibility of a witness's testimony and the weight to be given to his evidence. Certainly if he testifies in behalf of the accused who is being tried for the alleged crime of murder, and the evidence shows that he is closely related to the accused the jury may take this fact into consideration in determining the credibility of such witness and in weighing his testimony; and it is equally clear that if, in such a case, he stands jointly indicted with the prisoner on trial for the same alleged offense, the jury have the right to take this fact into consideration when weighing his testimony. This is so because these are facts which might naturally cause him to be biased or prejudiced in favor of the defense. The fact that some of the circumstances which the court charged could, if shown by the evidence, be taken into consideration by the jury in weighing the testimony of the witnesses were applicable only to certain witnesses did not render the charge erroneous, as "singling out" or "individualizing" those particular witnesses. The court had the right to point out, in general terms, what circumstances, if shown by the evidence, the jury could consider in passing upon the credibility of witnesses; and the fact that when the jury should come to consider the evidence some of these circumstances would be found to be applicable only to the testimony of particular witnesses can make no difference. Were it otherwise, it would be impossible in most, if not all cases, for the court, even in the most general terms, to indicate to the jury what sort of circumstances they could take into consideration in passing upon the credibility of witnesses and the weight to be given to their testimony; for it would rarely, if ever, be the case that all of the circumstances which the jury might properly consider for this purpose would apply to all of the witnesses. A similar objection to the charge of the court was made in *Wheeler* v. *State*, 112 *Ga.* 43, where the court charged the jury that they had "a right to consider the circumstances and condition of any witness as proven to have been at the time of the incidents about which said witness testifies," that they could consider the condition of the witness "as to soberness" and his "surroundings," "with reference to deter-

mine whether or not such witness was in a condition to see and understand what was occurring." The error assigned upon this charge was, that "it was argumentative, and singled out and was made applicable to a particular witness of the accused." It was held that "The instruction was general, and there was evidence to support it, and it certainly was not erroneous because it may have been applicable to only one witness."

3. It is alleged in the motion for a new trial that the court erred in overruling a motion to continue the case, upon the ground of the absence of a particular witness for the defendant. Motions to continue are addressed to the sound discretion of the trial court, and it is only where the discretion of such court has been clearly abused that this court will reverse a case because of the refusal of a continuance. The facts in connection with this motion to continue, as certified by the trial judge, are sufficient to warrant the conclusion that the motion was not made in good faith, and, under such circumstances, the discretion of the trial judge in overruling the motion to continue will not be interfered with by the Supreme Court.

4. Another ground of the motion for a new trial is that the court erred, while the motion for a continuance was being heard, in propounding to the accused certain questions. The questions and the answers thereto were as follows: "By the court: Q. 'Are you the man that said you could prove hell was an ice-house in thirty minutes?' A. 'No, sir. I never said that.' Q. (By the court) 'That was Steve, was it?' A. 'I don't know, sir.'" In certifying this ground the trial judge states: "The fourteenth ground is approved as follows: The remark that is criticised was made as a matter of pleasantry to the defendant in a side remark, and was not heard by but few near us. It was made laughingly to the defendant while waiting for a witness to be brought back into the back room, a jury-room to which we had retired, where we were all seated. We were not in the court-room, but had gone back into the jury-room, out of the presence of the public. Parties in the room did not all hear it. One of the defendant's counsel, who was present in the room, afterwards asked me what it was I said to the witness. There was no one present at the time but the defendant, his counsel, the State's counsel, the stenographer, and one or two of the defendant's friends. . . The remark was

not in connection with the case, and could not have affected the defendant in any way. His examination as a witness had been concluded by counsel on both sides, and another witness had been sent for." These manifestly irrelevant and inappropriate questions propounded by our learned brother, the trial judge, "as a matter of pleasantry," to a prisoner charged with and about to be tried for the grave offense of murder, would have afforded ample ground for setting the verdict of guilty aside and granting a new trial, if they had been asked in the hearing of any person who subsequently became a member of the trial jury. But these questions could not have been, as contended, "prejudicial and injurious to the accused" on his trial, when they were not asked in the presence or hearing of any of the jurors in attendance upon court, or of any person who subsequently served upon the jury that tried the case. They could not, therefore, have affected the verdict rendered, and consequently afford no cause for a new trial.

5. Another ground of the motion for a new trial was: "Because the court erred in overruling defendant's objection to being tried by the court organized for the second week under the following circumstances: . . At the August term, 1900, of Campbell superior court, his honor, John S. Candler, judge of said court, drew thirty-six traverse jurors, and the clerk entered on the minutes of the court at said August term said thirty-six names under the following caption: 'Traverse jurors drawn for the February term of Campbell superior court, 1901.' And on Monday, the 4th day of February, 1901, the clerk called the names of said thirty-six jurors, twenty-nine of whom, being present and having no lawful excuse, were sworn as traverse jurors, the first twelve to be known as panel No. 1, the second twelve as panel No. 2, and the additional five to be known as part of panel No. 3, to be supplied as the court might direct. Panels Nos. 1 and 2 served in civil cases on Monday, the 4th and 5th, and on the 6th the case of Pegram Cochran, one of the defendants in this indictment, was put on trial, and the forty-eight jurors placed upon him was the twenty-four of panels Nos. 1 and 2, the other five jurors of panel No. 3, and the forty-eight was completed by tales jurors duly drawn by the court and served by the sheriff. From said number put upon Pegram Cochran, several of panels Nos. 1 and 2 disqualified, some from relationship, some from having expressed opinion, and twelve jurors were

secured for the trial of said Pegram Cochran. During said week, at the end of each day, the clerk would enter on the minutes, and court approved the minutes, as follows: 'The court took a recess till to-morrow.' And on Friday, the 9th day of February, the verdict in the case of Pegram Cochran was rendered, and the trial ended. And on that date the court had the clerk to make the following entry, and made the following announcement: 'The court will now take a recess until Tuesday, February 8th, at 8 o'clock a. m.' The court excused some of the jurors for the term for legal reasons, and all who had acted as jurors in the trial of Pegram Cochran. No new jury was drawn during said week, but the court instructed all the traverse jurors and tales jurors who had been drawn for the previous week to appear on said Tuesday, except some excused for cause, and had also drawn and the sheriff serve thirty additional tales jurors. On Tuesday, February 12, after defendant had made his motion to continue, and the motion was overruled, and under said circumstances the defendant's counsel made the following statement: 'We want to submit to your honor that this trial can not proceed, because this is not the regular term of the court, and there has been no call of a special term; and we wish to offer evidence, if it is necessary, to show that no special term of court has been called to try this defendant.' The court announced that it 'did not adjourn, but took a recess; the February term is now in session, and has never adjourned at all.' On making said announcement, the court then placed upon defendant forty-eight jurors, the first twelve being those of panel No. 1, which had been carried over from the previous week, and the additional twelve being made up from the remaining traverse and tales jurors, drawn the week before, which had been supplied to fill the places of those excused; and when said array of twelve was placed upon the defendant, the defendant challenged the array, upon the ground that the regular term of the court had expired, and that there had been no call of a special term, and the jurors composing panel No. 1 had been summoned for the previous week, and had not been resummoned for the present week; they had been excused until Tuesday morning, after the trial of Pegram Cochran was begun, and told by the court to return at that time, and therefore could not act as jurors. The court overruled the challenge to the array. Defendant says that the above ruling is error; that the court should

have sustained his first point, that the court was not regularly organized for the trial of this case; that the court erred in not sustaining his challenge to the array, on the grounds therein stated, and also because the court erred in not sustaining his challenge to each poll of the six jurors of panel No. 1, as they were placed upon him; and for that reason a new trial should be granted him."

The law requires "That the judge of the superior court of the county of Campbell hold the spring and fall terms of said court, of each and every year, not less than two weeks, unless the business of said court is sooner disposed of." Acts of 1874, p. 42. The court, during the term at which the defendant was tried, met, as provided by law, on the first Monday in February, and on the following Friday, by a proper order duly entered upon the minutes, took a recess until the next Tuesday. It seems almost superfluous, therefore, to say that the regular February term of the court was not terminated by the order passed during the first week of the term, declaring a recess until a named day in the next week. When the court reassembled on the Tuesday following the recess, there was simply a continuation of the regular February term of the same; and there was, therefore, no merit in the contention that the trial of the defendant could not proceed, because it was not the regular term of the court, and no special term had been called to try the defendant.

6. Nor do we think that there was any merit in the challenge to the array of jurors put upon the accused, upon the ground that "the jurors composing panel No. 1 had been summoned for the previous week and had not been resummoned for the" week when this trial was had, and that "therefore [they] could not act as jurors." This challenge to the array was made when panel No. 1 was put upon the accused. This panel had been formed from jurors who, at the preceding August term, had been drawn, and subsequently summoned, for the February term, and tales jurors who had been duly drawn by the court during the first week of the latter term and summoned by the sheriff; and when the court took a recess that week, these jurors were instructed by the judge to appear for service on the following Tuesday. There was no necessity for formally resummoning them. Had the defendant challenged the array put upon him on the ground that the judge had not, as the law directs, drawn separate panels of petit jurors for

each week of the court, a very different question would have been presented. He did not challenge the array upon the ground that no separate panel of petit jurors had been drawn for the second week of the court, but upon the ground that the very jurors put upon him had not been resummoned for service during the second week of the court. In support of this ground of the motion for a new trial, counsel for the plaintiff in error have presented to this court an argument which would have been appropriate if the above-indicated objection to the array had been made in the court below ; but they can not raise here a question which was not raised in the trial court. They cite the case of *Bridges* v. *State*, 103 *Ga.* 21, but that decision does not show that the court erred in the present case in overruling the challenge to the array. There the challenge to the array was on the ground that "said array of jurors contains the names of 19 jurors who have not been drawn, summoned, and impaneled as required by law," the challenge showing the illegal manner in which these jurors had been selected and impaneled. The point ruled was, that "where in a county in which a superior court continues in session longer than one week, and at the commencement of the second week, the judge causes full panels of jurors to be organized from the persons regularly drawn and summoned for that week, it is error for him to direct the clerk, in making up a panel of forty-eight jurors for the trial of [a felony] case, to include in such panel jurors who have served during the preceding week and whom the judge has directed to report for duty during the week in which the case is being tried, such persons having been neither regularly drawn as talesmen by the judge, nor regularly summoned by the sheriff." This decision of the court was based on section 858 of the Penal Code, which provides: "When any person shall stand indicted for a felony, the court shall have impaneled forty-eight jurors, twenty-four of whom shall be taken from the two panels of petit jurors, from which to select the jury. If the jury can not be made up of said panel of forty-eight, the court shall continue to furnish panels, consisting of such number of jurors as the court, in its discretion, may think proper, until a jury is obtained. In making up said panel of forty-eight jurors, or successive panels of any number, the presiding judge may draw the tales jurors from the jury-boxes of the county, and order the sheriff to summon them, or he may order the sheriff to summon·

tales jurors from among persons qualified by law to serve as jurors." The course herein prescribed was not followed by the judge in the *Bridges* case. Twenty-four jurors were, as the statute directs, taken from the two panels of petit jurors who had been regularly drawn and summoned, but, in completing the panel of forty-eight for the trial of the felony case, the judge neither drew tales jurors from the jury-boxes and had them summoned by the sheriff, nor did he have them summoned by the sheriff from among persons qualified by law to serve as jurors ; but he ordered the clerk to place upon the panel the names of those jurors who had served during the preceding week, and who had not been excused from further attendance upon the court. This court held that this was equivalent to his selecting and summoning these jurors himself, and that they had not been selected as tales jurors in the manner pointed out by law.

In the case now before us the jurors challenged upon the array were not improperly selected, as tales jurors, by the judge to complete a full panel of forty-eight for the trial of a felony case, but they were one of the two panels of twenty-four petit jurors with which the organization of the panel of forty-eight, from which the trial jury was to be selected, began. The statute requires that twenty-four of the forty-eight jurors impaneled in a felony case shall be taken from the two panels of petit jurors. This was done in this case. Panel No. 1, which was challenged when put upon the accused, was one of the panels of petit jurors, the original panel of twelve having been broken by some of the members thereof being excused during the first week of the court, and having been subsequently completed from tales jurors drawn by the judge during that week and summoned by the sheriff. The error was not in beginning the formation of the full panel of forty-eight, from which to select the trial jury, with the two panels of petit jurors, but it was in not having drawn new and separate panels of petit jurors for the second week of the court. As we have seen, however, the array was not challenged upon this ground, but upon the ground that "the jurors composing panel No. 1 had been summoned for the previous week, and had not been resummoned for the" week when this trial took place. Manifestly, the purpose of the law in requiring separate panels of jurors to be drawn for the first and second weeks of the court is that the same persons shall not serve upon

the regular panels during both weeks. If the jurors who served during the first week had been resummoned, then, of course, the same persons who had served during that week would have reappeared in court for service during the second week; but if separate panels of jurors had been drawn for the two weeks, this would not have occurred. It seems clear to us that the challenge did not raise the question whether or not jurors drawn for the first week of the court could, over the objection of the accused, serve during the second week thereof.

7. Some of the grounds of the motion for a new trial allege that the court erred in refusing to give in charge to the jury certain written requests. It is sufficient to say that the charges contained in these requests were not authorized by the evidence in the case. One ground alleges that the court, in charging upon the subject of confessions and the necessity for a confession to be corroborated before it would justify a conviction, erred in not charging that the corroborating testimony must be such as to connect the accused with the crime charged. This is the rule in reference to the corroboration of the testimony of an accomplice, but it is not the rule in reference to the corroboration of a confession. There was ample corroboration of the confession of the accused; the testimony of the accomplice was sufficiently corroborated by evidence which connected the defendant with the perpetration of the offense charged; and the evidence as a whole fully warranted the verdict. This opinion and the foregoing headnotes sufficiently cover every question worthy of consideration presented by the motion for a new trial, in so far as the grounds of the motion were verified by the trial judge and argued here. There was no error in refusing a new trial.

　　　　　　*Judgment affirmed. All the Justices concurring.*