## BROWN *v.* THE STATE.

No. 8552. AUGUST 11, 1932.

334

*J. B. Jones, T. S. Candler,* and *J. M. Johnson,* for plaintiff in error.

*George M. Napier, attorney-general, Robert McMillan, solicitor-general, T. R. Gress, assistant attorney-general, Pat Haralson,* and *A. H. Henderson,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) It seems that the defendant, Hugh Brown, and his adjoining landowner, James Miller, had been upon bad terms for several years. On the day of the homicide Abe Brown, a son of the accused, was cutting out a hedgerow at or near the line between the coterminous owners, and digging or preparing to dig a ditch. It is not necessary to go into the details of the origin of the trouble or the immaterial transactions between the parties, which are recited in the brief of evidence. It is undisputed that Edith Miller, about 34 years old and a daughter of James Miller, was killed by the discharge of a single-barrel shotgun in the hands of Hugh Brown. The testimony for the State (the defendant introducing no evidence) fully authorized the jury to find that the shooting was intentional. There is evidence to the effect that Brown became angered in a colloquy in which he claimed that the decedent called him a liar. He ran off some distance and got a shotgun, which he held with both thumbs around the hammer. One of the State's witnesses testified that the accused more than once ordered the deceased to go to the house, and finally counted once, and twice, and then the gun fired, dropping the deceased to the ground, and she died in about two hours and a half. The defendant contended that the discharge of the gun was ac-

cidental; that the trigger was "tricky." He also claimed that the killing was done in self-defense, and that he did not intend to shoot Edith, but that he got the gun to shoot Jim Miller in case Miller attempted to use a pistol which Brown believed he was carrying concealed in his pocket. The counsel for plaintiff in error do not insist upon the general grounds of the motion for a new trial, and for this reason they may be treated as abandoned. The evidence fully authorized the jury to find the accused guilty, and we have referred to the evidence merely because the special assignments of error embraced in the three special grounds of the motion for a new trial depend for their merit upon the solution of the question as to whether the court, in his charge, properly applied the law, or applied the proper law, to the evidence in the case.

As will be seen from the statement of facts, the complaint in the first special ground of the motion for a new trial is addressed to the court's definition of the word "malice." Plaintiff in error says that the charge which is therein quoted is error, because it was confusing to the jury, because it left out the essential words, "nor in any degree excuse the intention, if the killing should take place as intended," and because it was inapplicable to the facts of this case, as there was no evidence of any intention to kill. The instruction is not confusing. The omission of the words last quoted was immaterial and apparently non-essential. The circumstances of this shooting gave indirect evidence to the jury of an intention to kill; and so the instruction was not inapplicable. The statements of the accused after the killing were acknowledgments upon his part that he intended to kill Miller; and if in attempting to shoot at Miller he killed Edith, the offense would be the same.

The charge contained in the second special ground is not erroneous for any of the reasons assigned. So far as delivered, the instruction is correct and complete. If further instructions were desired, they should have been requested. The fact that a killing may be in hot blood does not, without more, relieve or mitigate the offense of murder. Considering the charge in this case as a whole, it refutes all of the complaints alleged against it. In this ground the evidence is liberally quoted, in an endeavor to show that there was no evidence that the defendant was either intentional or reckless in the use of the deadly weapon. An examination of the evidence additional to that quoted, as well as this excerpt itself, might

authorize the jury to conclude that the defendant was exceedingly reckless in the use of the deadly weapon, especially as he knew that the trigger of the gun was, as he says, "tricky." Norman Ingram, one of the witnesses, testified: "Just before Brown shot, Edith told him he had told a lie. Brown shot just a second after this. At the time Brown said, 'I told you once, I told you twice,' he had his thumbs on the hammer, drawing the hammer back as he talked." The same witness testified: "When the gun fired Brown was not looking directly at Miller. I don't think I said he was. He was looking at the girl. She was the one he throwed the gun on. Brown had his thumbs crossed on the hammer. He was cocking it as he came up with it. The gun came up slowly."

The third ground complains that the court erred in leaving out of consideration the essential elements of malice or premeditation; and: (a) The charge authorized a conviction for murder by the "intentional use of a gun." (b) This was confusing to the jury, and they could well understand the court to mean that they should convict if the defendant intentionally had a gun in his hands. (c) The jury should have been charged that if the gun was intentionally in his hands but was fired accidentally, he could not be guilty of murder, or if the gun was fired through the negligent acts of this defendant in handling the gun he would not be guilty of murder, but would be guilty of one of the grades of involuntary manslaughter. (d) The charge was error because it left out the firing in hot blood. (e) The charge was argumentative, and particularly harmful to movant, in that it was about the last word from the court, and its effect was to efface prior instructions on accidental killing and involuntary manslaughter. (f) It was error because inapplicable to the evidence. We do not think that any of these assignments are meritorious. As already stated, we think the court had sufficiently defined the term "malice." Nothing said by the court authorized a conviction for murder by the "intentional use of a gun." Nor was anything confusing to the jury in the language used by the court in the instructions of which complaint is made. The instructions in regard to accidental killing, as contained in the charge, are clear and explicit; and elsewhere in the charge the jury were instructed that if the gun was fired through the negligence of the defendant in handling the gun, he would not be guilty of murder, but might be guilty of one of the

grades of involuntary manslaughter. If further instructions had been deemed to be of importance, an appropriate request should have been presented. The instruction complained of is not argumentative, or of such a nature as to affect the prior instructions on accidental killing and involuntary manslaughter. Nor was the instruction inapplicable to the evidence in the case.

We have several times read the evidence in this case. It was at first almost incredible that an old man, sixty-four years of age, should kill a woman in the circumstances of this case; so again we questioned, was not the shooting accidental? The charge of the court applicable to this inquiry would have fully authorized the jury to acquit the defendant, had the jury, in view of the evidence, sustained the defense of accident. But this is a question of fact, where the jury, in full possession of the law appropriate to the matter, found adversely to the contention of the plaintiff in error upon evidence which we find, upon review, fully authorized the conclusion that the killing was not an accident. The case is one, perhaps, which counsel for plaintiff in error frequently refers to as "hot blood." If so, the plaintiff in error permitted an ungovernable anger to take possession of him, with no greater provocation than that he was called a liar. He ran for his gun, he cocked it, he raised it slowly, and according to the evidence had the gun pointed at the body of Edith Miller when the shot was fired which robbed her of her life, entirely unarmed except with a woman's tongue. Mere words will not constitute an assault. Their use will not authorize the use of a deadly weapon, nor reduce the offense of murder (which every felonious homicide is presumed to be) to voluntary manslaughter. The plaintiff in error had a fair trial. There is no complaint as to the admission or rejection of testimony, or the existence of any incident in the course of the trial which might sway or prejudice the jury. The charge of the court was eminently fair, and a very able exposition of the law applicable to the facts in whatever light the jury might consistently view them. Nevertheless, as every citizen is responsible for the proper control of his temper, the plaintiff in error can not complain that he suffers the penalty of the law.

*Judgment affirmed. All the Justices concur.*