SMITH *v.* THE STATE.

850

No. 15039.   January 4, 1945.   Rehearing denied February 9, 1945.

852

*L. W. Nance, Leward Hightower, H. A. Allen,* and *A. L. Henson,* for plaintiff in error.   *T. Grady Head, attorney-general, F. E. Strickland, solicitor-general,* and *Maud Saunders,* contra.

GRICE, Justice.  ■  Complaint is made that the trial judge, on the call of the case, refused to continue it.  It is recited in the motion for new trial that one ground of the motion to continue was, that the attorneys representing the accused were appointed by the court and were not the counsel of his choice; that the accused did not have sufficient time since the alleged offense was committed, and since his indictment, to make the necessary arrangements with the attorneys of his choice; and on the further ground that appointed counsel did not have sufficient time to investigate and properly prepare his defense.  Statements to that effect were made by counsel in their place, were not contradicted, and no evidence was offered on the motion to continue.  The crime was alleged to have been committed on June 25, 1944; the indictment was returned on June 29, 1944; and the case assigned for trial on July 10, 1944.  Counsel were appointed on Wednesday preceding the call of the case on the following Monday.  It is not averred that counsel so appointed were incompetent, or that they were not faithful in the discharge of their duty.  It is not shown that the accused had employed other counsel, or that, if given further time, he would have employed other counsel.  The bare statement in the motion to continue that appointed counsel had not had sufficient time to investigate and prepare the defense, was a mere conclusion.  Questions

of this nature must of necessity be entrusted to the discretion of the trial judge. It does not appear that he abused his discretion in overruling the motion to continue on this ground. Compare *Cannady* v. *State,* 190 *Ga.* 227 (9 S. E. 2d, 241).

Another ground of the motion to continue, as recited in the motion for new trial, was on account of the absence of Dr. Howard, a practicing physician, it being contended that "Dr. Howard, a practicing physician, was a vital witness in the case for the defendant, and that he could not go safely to trial without him; that he was in New York, and not available." The evidence adduced upon the hearing for a continuance, briefly stated, showed that Dr. Howard was a practicing physician; that he was in New York; that he had not been in the county since before the offense was alleged to have been committed, and therefore had not been summoned; that the sheriff of the county had a summons for him; and that he resided in the county and in the town where the offense is alleged to have been committed, and was expecting to be back on Wednesday of the same week, which was only two days from the time of the motion. The defendant testified in substance that Dr. Howard was one of his witnesses; that it was his purpose to have him there at the next term of court; that he could not safely go to trial without his testimony, and expected to prove by him his wife's physical condition the last time he saw her, which was a short time before; that he expected to prove by him that certain statements made by certain people accusing him of certain things were false, and that he could not prove these things by anyone else. Analyzing the contentions thus made, it appears that by the absent witness he expected to prove his "wife's physical condition the last time he saw her, which was a short time before;" and that "certain statements made by certain people accusing him of certain things were false." As to the first quoted portion of the expected testimony, it is not averred what was the physical condition of his wife which he expected to show by the absent physician, or how the testimony of the physician would aid him. As to the second quoted portion, it is not shown that the physician, were he present, would by his testimony disprove any of the facts testified to by the State's witnesses. It does not appear that the accused was entitled to a continuance on account of the absence of the doctor.

Finally, it is said that the motion to continue should have been

granted "on the further grounds that Mrs. C. J. Smith was an important witness; that she was a sister-in-law of the defendant, and had been present with him and his wife on the Sunday before the offense is alleged to have been committed on Sunday night; that she was pregnant and unable to appear on the witness stand, although she had been in Zebulon the day before, and spent five hours with defendant, and that she resided in Griffin." Waiving other possible defects in the showing, as to this witness, it will be noted that it is not claimed that, had the witness been present, she would have testified to any fact favorable to the accused. No error is shown in overruling the motion to continue.

■ A new trial is sought because the judge charged the jury as follows: "The law presumes every homicide to be felonious until the contrary appears from circumstances of alleviation, or excuse, or justification, and it is incumbent on the prisoner to make out, by a preponderance of the evidence, such circumstances to the satisfaction of the jury, unless they arise out of the evidence produced against him." It is insisted that this charge was error for two reasons: "First. Because the language, 'the law presumes every homicide to be felonious until the contrary appears from circumstances of alleviation, or excuse, or justification,' is an incorrect statement of the law and prejudicial to this movant. Second. Because the language, 'and it is incumbent on the prisoner to make out, by a preponderance of the evidence, such circumstances to the satisfaction of the jury, unless they arise out of the evidence produced against him,' is an incorrect statement of the law and prejudicial to movant, because it places upon him a greater burden in such case than is provided for by law."

As to the first objection, it is sufficient to say that the presumption there referred to will be found stated over and over again in the decisions of this court. Without attempting to cite them all, it is sufficient to refer to *Hudgins v. State*, 2 *Ga.* 173, 188; *Mann v. State*, 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934); *Parker v. State*, 197 *Ga.* 340 (29 S. E. 2d, 61).

As to the second objection, the language frequently approved is, that "it is incumbent on the prisoner to make out said circumstances to the satisfaction of the jury," instead of "by a preponderance of the evidence." In *Boyd v. State*, 136 *Ga.* 340 (71 S. E. 416), this court said that it did not commend the use of the ex-

pression, "by a preponderance of the evidence," in this connection, but it was not there decided that a new trial would be granted on that account. When the State makes out a prima facie case, and the defendant offers an alibi as a defense, it has been ruled that it is not erroneous to charge the jury that the burden is on him to make it out by a preponderance of the evidence. *Cochran* v. *State,* 113 *Ga.* 726 (39 S. E. 332). Likewise, it has been held that when one on trial for murder relies upon the defense of insanity, the burden is on him to rebut the presumption of sanity by a preponderance of the evidence. *Clark* v. *State,* 167 *Ga.* 341 (145 S. E. 647). In the instant case, the judge charged the jury that it was incumbent on the accused to make out such circumstances to the satisfaction of the jury by a preponderance of the evidence. We are unable to perceive how the defendant was hurt by the use of the words, "by a preponderance of the evidence," preceding his instruction that the burden was on him to make out such circumstances "to the satisfaction of the jury." What lesser burden could he have carried than by a preponderance of the evidence to make such appear to the satisfaction of the jury?

■ A ground of the motion for new trial says that the court erred in failing to charge the jury the law of voluntary manslaughter, because it is in the record that a witness, a brother of the accused, testified that "he heard the deceased say to the defendant, 'you son of a bitch,' and that the defendant then slapped the deceased." There is no evidence of any assault by Mrs. Smith on the accused. Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder. Code, § 26-1007; *Brown* v. *State,* 175 *Ga.* 329, 337 (165 S. E. 252). Therefore it would have been improper to charge the law of voluntary manslaughter. No error is shown in this ground of the motion.

■ In another ground, the following contention is presented: "Movant contends that a new trial should be granted, for the reason that the court during the progress of the trial gave the following erroneous and prejudicial charge to the jury as follows: 'If you believe that the defendant, E. V. Smith, killed the person named in the indictment, Mrs. E. V. Smith, in the manner therein charged, with an instrument that, in the manner in which it was used, was a weapon likely to produce death, and without circum-

856

stances of justification or mitigation, under the instructions here-inbefore given you, then you would be authorized to find the defendant guilty of murder, as charged in the indictment.' Movant contends and insists that this charge was error because the language, 'with an instrument that, in the manner in which it was used, was a weapon likely to produce death,' was erroneous and prejudicial, because no evidence was produced at the trial that the defendant used any instrument whatever, which, as movant contends, was likely to produce death or not to produce death." In dealing with this ground, it should be remembered that the indictment charged the accused with murder, in that he "did then and there unlawfully and with force and arms, his hands, fists, and other blunt instrument, the nature and kind thereof being unknown to grand jurors, and with malice' aforethought, kill and murder one Mrs. E. V. Smith by then and there assaulting, striking, and beating to death the said Mrs. E. V. Smith." Let the language in the indictment be noted—"his hands, fists, and other blunt instrument." This can mean nothing else than that the defendant's hands and fists were charged to be a blunt instrument, and no demurrer to the indictment was presented, so far as the record shows. Secondly, it may be observed that there is respectable authority to the effect that "fists" are a "weapon" likely to produce death, or at least may be, although there are many decisions which hold that fists are not weapons, as that term is used in an indictment describing the manner in which the accused made the assault. See 11 Words and Phrases (Perm. ed.), p. 135 et seq.

The charge complained of, however, referred to "an instrument that, in the manner in which it was used, was a weapon likely to produce death." The complaint is that there was no evidence to show that the accused used anything but his hands and fists. The indictment further refers to a "blunt instrument, the nature and kind thereof being unknown to the grand jurors." If it be permissible, as it is, for a grand jury to charge a person with having inflicted a mortal wound with a kind of instrument to them unknown, why should it not be permissible for a jury to find that the deceased came to her death by the use of an instrument the nature and kind of which is unknown to them? When a homicide is committed, and contusions and abrasions are found on the body of the deceased, and no one was present when these were placed there,

and hence no one can testify as to the particular instrument used to deal the deadly blows, and the indictment charged that the accused did kill and murder with his hands, fists, and other blunt instrument, how can it be said to be erroneous for the trial judge to charge the jury as he did in this case? Jurors have the sworn evidence. From it, they have a right to draw reasonable deductions. Even if there be no direct evidence that the deceased came to her death from the use of a blunt instrument, the jury could have concluded from the nature of the wounds that a blunt instrument was used. It was not erroneous to instruct the jury as complained of in this ground of the motion.

■ Is the verdict, finding the accused guilty of murder, supported by the evidence? An abstract of the material portions of the testimony is shown in the preceding statement. It amply justified the conclusion that the deceased came to her death as the result of a beating inflicted upon her by the accused. She was unarmed, and apparently helpless. There was not one assault upon her, but several. The wounds she received were many and severe. The trial judge charged the jury on the law of involuntary manslaughter, correctly instructing them in this connection that, if the killing was done without any intention so to do, but in the commission of an unlawful act which in its consequences naturally tended to destroy the life of a human being, the offense should be deemed to be murder. The testimony of the State's witness, Mrs. Sarah Cole, was to the effect that, after the accused, while in the house, had struck his wife across the head and her head was bleeding, the blood dripping to the ground, and she had tied a towel around her head, and gone to the edge of the porch and sat down, the following took place: The accused turned around to his wife and said, "I told you to go back in the house." She did not say anything. He told her again, and she kept sitting there, and he told her the third time, and then he struck her in the head and knocked her back against the well several times. The witness added: "Her head sounded like a rock hitting the well as he knocked her head against it. Her head hit the well at least three, if not four times." The jury were authorized to draw the conclusion that the bruises on her face and back of the ear and back part of the head were received at that time, and that as a result she died. It would, in our opinion, be an invasion of the province of

the jury to rule that, under the facts contained in this record, they were not authorized to find that the killing occurred in the commission of an unlawful act which in its consequences naturally tends to destroy the life of a human being. The verdict having received the approval of the trial judge, his judgment refusing a new trial will be        *Affirmed. All the Justices concur.*