*Isaac S. Peebles Jr.,* contra.

## WEAVER *v.* THE STATE.

268

No. 15150.   MAY 10, 1945.

*John S. Wood* and *John T. Dorsey,* for plaintiff in error.

*T. Grady Head, attorney-general, H. G. Vandiviere, solicitor-general,* and *Victor Davidson, assistant attorney-general,* contra.

GRICE, Justice.   Lewis Weaver was indicted and tried for murder.   On the trial a witness testified that he was present when Dan Goolsby, the victim, approached Weaver and demanded his money or liquor which he said he had purchased, calling Weaver a damn son of a bitch; and that he saw Weaver strike and knock Goolsby down with a stick very similar to, if not identical with, the one exhibited and introduced in evidence.   The expert who made an autopsy on the body some ten days later testified that this stick, if used with great force, could have produced the fractures he found on the back of Goolsby's head, and could have caused his death.   Witnesses testified that the stick exhibited looked like the one they saw Weaver carrying a few hours before he struck Goolsby, and that it was found in a certain lumber yard where, after being questioned, Weaver said he left it.   Other direct and circumstantial evidence tended to connect him with the commission of the crime.   The jury returned a verdict of guilty with a recommendation to mercy.   His motion for a new trial was overruled, and he excepted.

■   Special ground 1 of the motion for new trial takes the position that the court erred in not charging without request "the law of voluntary manslaughter, which movant insists was and is applicable to this case;" and the movant attaches to this ground certain portions of the evidence which he insists support him in the position taken.   The complaint there set forth is too vague and indefinite to raise any question for determination by this court.   "A ground in a motion for new trial, in a conviction for murder, that 'the court erred in not giving in charge to the jury the law

of voluntary manslaughter,' is too vague and indefinite an assignment of error to raise any question for determination by this court. *Smith* v. *State,* 125 *Ga.* 300 (54 S. E. 124) ; *Wilson* v. *State,* 156 *Ga.* 42 (118 S. E. 427), and cit.; *Burley* v. *State,* 158 *Ga.* 849 (3) (124 S. E. 532) ; *Harris* v. *State,* 178 *Ga.* 746 (3) (174 S. E. 240) ; *Parham* v. *State,* 180' *Ga.* 233 (2) (178 S. E. 648) ; *Bryant* v. *State,* 180 *Ga.* 238 (178 S. E. 651)." *Harris* v. *State,* 184 *Ga.* 165 (190 S. E. 554).

When one examines the brief of evidence in this case, he is in position to appreciate the difficulty under which the movant's counsel would have labored in endeavoring to state what particular principle of the law of voluntary manslaughter was involved. There was no evidence of any mutual combat. The testimony of the only witness who saw the assault was to the effect that Goolsby, who was so drunk he could hardly stand up, went unarmed towards his assailant, using opprobrious words towards him, whereupon the accused struck him with the piece of wood. Compare the Code, § 26-1007; *Duncan* v. *State,* 141 *Ga.* 4 (80 S. E. 317) ; *Brown* v. *State,* 175 *Ga.* 329, 337 (165 S. E. 252). In his statement, the accused denied having been present at the time the offense was committed. But, if because of what the brief of evidence contains, and what it does not contain, it is made impossible for counsel for the accused to do more than he has done in framing this ground of the motion, this does not relieve us from the duty of applying the well-known rule of practice referred to next above.

■ The second ground insists that the court erred in not charging without request "the law of alibi, which movant insists was and is applicable to this case;" and there follows as a part of this ground certain extracts from the brief of evidence, which the movant insists required a charge on this principle of law.

If it be assumed that this ground of the motion is immune to the fatal ailment which struck down the first ground, then it seems that there are at least two answers to the movant's position. *Mathis* v. *State,* 153 *Ga.* 105 (111 S. E. 567), and *Jackson* v. *State,* 172 *Ga.* 575 (158 S. E. 289), were cases in which this court said that the evidence, construed most favorably for the movant, did not reasonably exclude the possibility of the presence of the defendant at the scene of the homicide; and therefore it was not error to fail to charge without request the law of alibi, since "alibi as a defense

involves the impossibility of the prisoner's presence at the scene of the offense at the time of its commission." The witness Pritchett is the only one who undertook to fix the time of the homicide, and his evidence was, that "I didn't have no timepiece with me, but that should have been about ten o'clock, and that is my opinion about it." Mrs. Dewey Johnson testified: "I recall the morning that Dan Goolsby was found dead in the road out there. I had gone to bed that night between nine and ten o'clock. Lewis Weaver stayed all night that night at our house, stayed in the room with that boy of mine, upstairs. As to whether I know what time he came there, or whether I just saw him the next morning—well, he came just after we went to bed, five or ten minutes." The evidence further showed that the body of the dead man was found in the immediate proximity of the house wherein the Weavers and Johnsons lived, about which Mrs. Johnson testified. Thus the testimony does not show the impossibility of the presence of the accused at the scene of the offense at the time of its commission; and a charge on the law of alibi as contained in the Code, § 38-122, was not required.

The second answer is, that the judge in his charge gave the defendant the benefit of the contention made by him in his statement, that the accused was not present at the time the injury to the deceased occurred, if he received any injury. This is apparent when that part of the charge is considered wherein the judge instructed the jury as follows: "Now the defendant, gentlemen, denies that he killed the person named in this indictment. He denies that he struck the person named in the indictment. He contends that, while the deceased was present at his home on the evening before he was found the next day, he left him in the presence of some other party or parties, and that he, the defendant, went to his home and went to bed—or the house where he resided and went to bed—and left him outside with some other people; that he did not strike him, had no difficulty with him, was not implicated in any way in any injury that he may have received, and was not present at the time it occurred if he received any injury. If you should find his contentions to be the truth of the case, then he would not be guilty under the law, and it would be your duty to acquit him."

■ Ground 3 of the motion complains that the court, over objection by the movant, admitted in evidence photographs of the

decomposed body of the deceased, made ten days after the date of the alleged homicide. We learn from an inspection of the record that these photographs show wounds in the neighborhood of the neck near the base of the brain, on the back of the head. One of the issues in the case was whether or not these wounds caused the death of the deceased. An expert testified that in his opinion they did. "On the trial of a defendant for murder, the throat of the deceased having been cut and the character of the wound being important to elucidate the issue, a photograph of the wound was admissible in evidence." *Franklin* v. *State,* 69 *Ga.* 36 (47 Am. R. 748). See also *Russell* v. *State,* 196 *Ga.* 275 (26 S. E. 2d, 528), and cit.

■ Ground 4 complains of the admission in evidence, over objection by the accused, of a certain stick which had been referred to as a "tie-stick." The evidence was sufficient to authorize the jury to find that this was the stick with which the deceased was struck and which caused his death. There was no error in admitting it in evidence.

■ Ground 5 recites that, "After completion of evidence, the argument of counsel, and charge of the court, and upon the retiring of the jury to consider said case, the prosecuting attorneys, without having tendered the same in evidence or given this movant or his counsel an opportunity to object to the admission thereof, placed in the hands of the jury the following documents, to wit"—these documents being an affidavit of Susie Johnson and an autopsy report on the body of the deceased. To this ground of the motion the trial judge added the following note: "The affidavit of the witness, Susie Johnson, was exhibited to her while she was on the stand and being examined by the solicitor-general, who stated he had been entrapped by the witness, and, in the presence of the jury and counsel for the defendant, examined her with reference thereto, and the affidavit was placed on the table of the court reporter along with other documents, and was referred to in the argument of counsel; and, while not formally tendered in evidence, was handed to the jury when they retired along with other documents which had been formally introduced in evidence. The original report of the witness, Dr. Herman D. Jones, was produced by him while he was under cross-examination by counsel for the defendant, and at the request of counsel for the defendant, and he

was examined with reference to it at length in the presence of the jury, and reference to the report was made by counsel in their argument, and it was placed on the table of the court reporter, along with other documents which had been formally tendered in evidence, and was identified by the reporter, and in that way was sent out with the jury along with other documents."

It will be noted that this ground contains no statement that neither the attorneys nor the accused knew at the time or before the verdict was received that these papers had been placed in the hands of the jury before they retired. The ground does not even negative the idea that the papers were sent out with the jury with the consent of the accused and his attorneys. In Maynard *v.* Fellows, 43 N. H. 255, an exception was taken because certain papers were sent to the jury room. After stating that it could not have operated prejudicially to the losing party, Bell, Chief Justice, has this to say: "But there is a further answer to this point of the case. It is founded on a mistaken view of the duties of counsel. It is not enough to say that a paper was improperly sent to the jury by the adverse party without his knowledge. It is his duty to ascertain what papers are sent to the jury, before they leave the court; and no motion for a new trial should be allowed, merely because this duty had been neglected. It should appear that the counsel used due care, that none but proper papers were passed to the jury; and that the paper in question was sent to the jury by some mistake, or through some trick or artifice of the opposite counsel. Here it is only said that the paper was handed to the jury without the knowledge of the trustees' counsel." Judge Seymour D. Thompson, in 2 Thompson on Trials (2d ed.), § 2591, incorporates what has been quoted from this New Hampshire decision into his text, thus giving it the stamp of his approval. This statement is again quoted with approval in McCormick *v.* Badham, 204 Ala. 2 (85 So. 401). State *v.* Nichols, 29 Minn. 357 (13 N. W. 153), was a case where, as the jury were about to retire, the court delivered to them certain papers, part of the record certified from the justice before whom the proceedings were instituted. No objection was made. The court held that, this having occurred in court and upon the trial, it would be presumed that the defendant's attorney knew the fact, in the absence of a distinct showing that he did not know it, and, by not having objected or otherwise called

the court's attention to what was afterwards claimed to be error, he would be deemed to have consented. In the opinion, the court reasons as follows: "This was a proceeding in court and in the trial of the cause. It is to be presumed that the attorneys conducting the trial knew of the delivery of the papers to the jury, and there is nothing to show that they did not know that among the papers so delivered was the record of the examination, which had been read to the jury by the defendant, and the transcript of the docket. It is not enough in such case for the moving party to show that he was 'ignorant of the actual character of the papers.' The statement does not reach the fact which alone is material in this connection, viz.: Was the attorney ignorant of the fact that the papers in respect to which error is now alleged were delivered to the jury? If the attorney knew, as we must presume he did, in the absence of a showing to the contrary, that the court delivered to the jury the papers referred to, although he was ignorant of their actual character, it was incumbent upon him to see that papers not proper to go to the jury should be withheld, and by objection or otherwise to call the attention of the court to what is now complained of as error. This not having been done, we will not consider whether or not the papers were properly submitted to the jury."

We are content to rest our ruling upon the foregoing authorities, and hold that, since it does not appear but that the accused and his counsel knew before the jury returned their verdict that the papers had been delivered to the jury, the attorneys, in the absence of a showing to the contrary, are presumed to have known that the papers were so delivered to the jury.

■ The general grounds of the motion have been carefully considered. The evidence was sufficient to authorize the verdict.

*Judgment affirmed. All the Justices concur.*