*Napier, Wright & Cox* and *Jesse M. Wood,* contra.

BOYD <em>v.</em> THE STATE.

HOLDEN, J. 1. The State introduced testimony that the defendant stated before the coroner's inquest that he undertook to take a gun from the deceased, and that "in tussling over the gun the gun went off." *Held,* that the refusal of the court to permit the defendant to prove by the witness delivering such testimony that, in the statement about which he was testifying, the defendant also stated that the shooting of the deceased was an accident, was not error requiring a new trial, in view of the fact that the court subsequently reversed such ruling and permitted the defendant to make such proof by the witness.

(a) When the defendant was allowed to prove by the witness that, in the statement referred to in the preceding note, the defendant also stated that the discharge of the gun was an accident, it was error for the court to rule: "I don't allow these words about it being an accident to go in to show it as a fact; to show it was an accident, but as a disclaimer of guilt. The court allows it to go in only to that extent."

2. The evidence required a charge on the subject of involuntary manslaughter in the commission of a lawful act without due caution and circumspection, and the court committed error in failing to charge upon that subject.

3. Whether or not it would require the grant of a new trial that, in the trial of one indicted for murder, the judge charged the jury that "the law presumes every homicide to be felonious, until the contrary appears from circumstances of alleviation, or excuse or justification, and it is incumbent upon the prisoner to make out by a preponderance of the evidence, if a homicide is shown to have been committed by him, such circumstances to the satisfaction of the jury, unless they arise out of the evidence produced against him," this court does not commend the use of the expression that it is incumbent upon the accused to make out his defense by a preponderance of the evidence; and especially is this true where the defense was that the homicide was accidental rather than intentional.

(a) If a homicide is proved, and the evidence adduced to establish it shows neither mitigation nor justification, malice will be presumed from the proof of the homicide; but the presumption is rebuttable, and may be overcome by evidence of alleviation or justification. If the evidence adduced to establish the homicide presents two conflicting theories, one of malice and the other of absence of malice, it becomes a question of fact to be decided by the jury as to which aspect of the evidence is the real truth of the occurrence. Where the only evidence adduced by the State to show that the accused committed the homicide consists of proof of a dying declaration by the deceased that he killed her, and proof of a statement made by him in which he stated that he killed her but that it was an accident, the charge set out in the preceding headnote (except in regard to the point therein dealt with as to the charge in regard to the preponderance of evidence) can not be held to be error requiring a new trial; but on a new trial, the distinction between the different rules of law applicable where the proof of the homicide rests upon a statement of the accused proved by the State which includes in itself exculpation, and where the homicide is proved by evidence which does not also include exculpation or mitigation, should be more clearly made. *Futch* v. *State*, 90 *Ga.* 472 (8), 480, 481 (16 S. E. 102); *Mann* v. *State*, 124 *Ga.* 760, 762 (53 S. E. 324, 4 L. R. A. (N. S.) 934).

4. Except as pointed out in the preceding notes, no error requiring a new trial appears in any of the grounds of the motion for a new trial, or of the amendment thereto.

*Judgment reversed. All the Justices concur.*

MAY 12, 1911.

Indictment for murder. Before Judge Worrill. Terrell superior court. September 17, 1910.

The plaintiff in error (hereinafter called the defendant) was convicted of murder, and to the refusal of his motion for a new trial he excepted. The evidence on behalf of the State was substantially as follows: Frank Bowen testified, that, while sitting in his house

at about 7 o'clock at night, October 21, 1909, he heard a gun fire, and on going out found the deceased lying on the edge of the road just outside of his yard, with a wound about the size of a silver dollar in her stomach. The wound was inflicted by the firing of a shotgun, and was just "a bit to the right of the stomach." When the gun fired he was 75 or 80 feet from where the deceased was found, and the noise of the gun appeared to come from this place. When he reached her body no one else was there and no weapon was near her. "She said something about Sell [the defendant] shooting her, some way or other, but I don't remember how she brought that in. . . The deceased was his (defendant's) wife, or the woman he was living with as his wife. She lived 15 or 20 minutes after I found her. She lived about 150 or 200 yards from that place on a plantation road. I examined the place where her dress was struck by the load; it was powder burned. I examined enough to see whether there was any wound on the back side; I noticed that there was a knot pushed higher up on her back than the wound in front. I felt of it; it felt like shot. Her husband came in about twenty or thirty minutes, and stayed there until Mr. Lewis came and brought him to town. . . This man and woman had been getting along fairly well, as well as negroes generally get along, before the time of the shooting. They had a few little disputes since I had been there. . . Sell Boyd said at the coroner's inquest that they were tussling over a gun and she got shot; and that is all that I remember having heard him say at the coroner's inquest. He said that she was drinking, and that she had started up towards your house with the gun; that he overtook her, and told her to give him that gun; that he caught hold of it, and she jerked back, and that the gun went off accidentally. Sell Boyd said at the coroner's inquest that the shooting was an accident; that he was simply trying to get the gun away from her when it fired; that she snatched the gun when he caught hold of it, and that it was all an accident; that she went out of the house and carried the gun and was going up towards my house when he overtook her and tried to take the gun away from her; that, to the best of my recollection, he said at the coroner's inquest that she was drinking, and what I am now talking about is what Sell Boyd said at the coroner's inquest. . . He said that she was leaving the house, and that he followed her; and that in trying to take the gun away from her

it went off. . . I saw Sell Boyd that night after the shooting; he was very little drunk; he may have had a drink, I would not say that he was drunk; I could smell some whisky on him and her too. I smelt some whisky on him. I smelt whisky on Ella Boyd too." R. B. McLain testified that he was a member of the coroner's jury which held an inquest on the body of the deceased in the house in which she and the defendant lived. "There was a little single-barrel breech-loading shotgun exhibited to us, with which they told us the killing was done; Sell Boyd, I believe, said it was the gun. . . I think that Sell brought the gun in there. . . Sell Boyd, at the same time and place in which he told me that this was the gun that the shooting was done with, told me that his wife took the gun and started up the road, and he followed her up there and attempted to take the gun away from her, and in the tussle it went off. . . . My recollection is that he stated that she went off up the road with the gun and he followed her, and he followed her up and attempted to take the gun away from her, and the gun went off. He said that in tussling over the gun the gun went off. I think that Sell Boyd said, in that same conversation, that he did not intend to kill her." C. P. Buchannan, the coroner, testified that he failed to find any "powder stains or burns about the wound, if there were any. . . I examined a dark skirt, and around that hole in the skirt was some sand and dirt. The clothing were not on her at the time I examined them. They had been taken off of her. The woman had been re-dressed at the time I examined her. The clothing that she had worn at the time that she had been shot were on the floor, by the window. They were bloody. The hole in the garments that I examined looked to be about the same size of the hole in the body. The dark skirt had some dirt on it, but I saw no signs of powder stains. The skirt I examined was a dark skirt, and I suppose it was an outer garment. . . It had dirt or sand or something of that nature on it. . . I don't know that the clothes I examined were the clothes that she had on at the time she was shot. . . I can't swear whether that was a skirt or a dress that I found the hole in. I can not swear positively what part of the stomach that wound was in. I don't know exactly whether it was below the waist, along where the skirt hangs." The defendant introduced no testimony and made no statement upon the trial.

*M. C. Edwards* and *M. J. Yeomans,* for plaintiff in error.

*H. A. Hall, attorney-general, J. A. Laing, solicitor-general,* and *R. R. Arnold,* contra.