468

DECIDED JUNE 19, 1931.

*O. J. Franklin, J. H. Milner*, for plaintiff in error.
*M. H. Boyer, solicitor-general*, contra.

LUKE, J. The indictment in this case charges that Unis Jackson committed the offense of murder by shooting Myrtle Lou Walker with a gun. The jury found the defendant guilty of voluntary manslaughter, and the exception here is to the overruling of his motion for a new trial.

Special ground 1 complains that the court "erred in failing to charge the jury the law applicable to the offense of involuntary manslaughter in the commission of an unlawful act." There was no request to give such charge.

As introductory to a presentation of the facts more directly applicable to the question under consideration, we state somewhat generally that the Jackson and Walker families lived on farms near each other; that it is strongly inferable from the evidence that Alex Walker had recently had a difference with Sue Jackson, the defendant's mother, about some cotton which Walker claimed the woman's husband owed him, and which Walker wanted Sue to pay; that Walker's daughters, Myrtle Lou and Annie Lee, and Sue Jackson's two daughters had engaged in a difficulty the day before the killing, which resulted in one of the Jackson girls being struck a severe blow on the head with some instrument; that Myrtle Lou Walker was shot near the heart with a load fired from a single-barrel shotgun; that she died from the wound; that no powder burns were found on her person; that the shooting occurred between nine and ten o'clock on Sunday night at the Jackson home; and that the venue was proved.

Alex Walker, the father of the slain woman, testified that in returning from church, he, his wife, his daughter Annie Lee, and

the latter's escort, Bill Sutton, found it necessary to pass the Jackson home; that witness, who was some distance behind the others of his party, heard his wife say to Sue Jackson: "Why you all got after my daughter?" and when witness reached the Jackson house his wife, Annie Lee, Bill Sutton, and Myrtle Lou were in the road which passed in front of said house; that witness came up and put his hand on the gate, and asked Sue Jackson what was the matter with her children, and that she make them behave; that thereupon, without being addressed, and without provocation, defendant said: "God damn you, you come on," and struck witness with a hoe, breaking the small bone in his arm, and "reached back in the door and got his gun and shot Myrtle Lou;" that when Myrtle was shot she was standing outside the yard with her hand on the fence, and was unarmed; that witness did not enter the yard until his daughter was shot, but that upon hearing the defendant ask for another shell he went in the yard and tried to take the gun away from the defendant; that the Jackson girls and their mother set upon witness and beat him with sticks, and Sue Jackson got the gun away from him; that witness had no weapon of any sort; and that the defendant shot only one time. (As explanatory of the question that the witness states his wife propounded to Sue Jackson—"Why you all got after my daughter?" we will state that there was testimony in the record that the Jackson girls had just chased Annie Lee Walker away from their house.)

Theus Jackson, defendant's sister, testified that Annie Lee Walker came to the Jackson home, cursing and daring witness to come out; that Sue Jackson told witness not to go out of the house, and ordered Annie Lee away; that Alex Walker came up and said: "What are you doing to that girl?" and started in the gate; that Lou Jackson told Walker not to enter the gate, and Walker said: "I am going to kill you, God damn you, or make you kill me," and came in the yard; that witness's mother struck Walker with a brush-broom, and Walker seized a hoe and struck the woman with it; that defendant then "ran into" Walker, and Walker threw defendant down and was trying to break his neck; that at this juncture the Walkers and Jacksons joined in a general fight, and the Jacksons beat Walker loose from the defendant, and the latter went up the door-steps and got a gun; that Mr.

Walker met him at the top door-step, and they were tussling over the gun, and it fired and shot Myrtle; and that "she was standing right at the door-step reaching over her daddy, trying to hit Unis, at the time she was shot."

Emmet Bledsoe, sworn for the defendant, testified that the night after the shooting the following occurred at the home of Alex Walker: "He (Alex Walker) . . was explaining how it took place, the best I could guess. He said: 'I don't think Unis intended to shoot Myrtle Lou because he and myself were having a wrangle, and he got loose and ran into the house and I followed him to the door. As he come out he come out with a gun, and I grabbed him, and about the time I grabbed him the gun fired.'"

We quote as follows from the defendant's statement to the jury: "I ran around and grabbed him, and he grabbed me around the neck, holding me beating on me, and my sisters come there and beat him loose from me. No quicker than they beat him loose from me he started up the door-steps. He caught me in the suspenders. I went on up the door-steps, and went behind the bed and got the gun. When I got back to the door, he grabbed me, trying to take the gun away from me, and, through tussling, the gun fired off. . . So far as shooting the girl, I did not know she was there. I did not have nothing in the world against the girl."

We are in no wise concerned with the general grounds of the motion for a new trial, and have not undertaken to set out all the testimony appearing in the voluminous record, or all the testimony of any witness. Several witnesses who are not mentioned here testified in the case. However, we think that the foregoing sufficiently shows the State's contention and the defendant's contention so far as the question under consideration is concerned.

We quote from *Freeman* v. *State*, 158 *Ga.* 369 (2) (123 S. E. 126) : "The defendant timely requested the court to instruct the jury 'that if the defendant, Lula Freeman, killed the deceased without any intention to do so, but in the commission of an unlawful act, she would be guilty of involuntary manslaughter in the commission of an unlawful act.' The court declined this request, and the principle embraced therein is not covered by the general charge. Besides the evidence of her statements set out . . the jury had before them the defendant's statement in which she gave

this version of the homicide: Her husband came to the door and said: 'Find me my gun,' and she said: 'What for?' He said: 'I am going to kill you,' and she said: 'What?' and he said: 'Yes, I am,' and then he slapped her, and she said: 'Don't slap me,' and he said: 'I will kill you,' and he took up the gun and they tussled over it, and the gun fired. She did not kill him. She did not intend to kill him. She was trying to keep him from killing her. *Held:* (*a*) Where there is evidence sufficient to raise a doubt, however slight, upon the question whether the homicide was murder or manslaughter, voluntary or involuntary, it is the duty of the court to charge on all these grades of homicide. *Wynne* v. *State,* 56 *Ga.* 113; *Jackson* v. *State,* 76 *Ga.* 473 (3). (*b*) Under the proof by the State of the statements alleged to have been made by the defendant, and under her statement to the jury on the trial, the court erred in not instructing the jury as requested. *Boyd* v. *State,* 136 *Ga.* 340 (2) (71 S. E. 416). . . (*f*) An instruction which embraces the law embodied in section 40 of the Penal Code, and applicable to the defense that a homicide was one by misfortune or accident, does not cure the omission of the court to give in charge the law of involuntary manslaughter, when the latter grade of homicide is involved in the case."

The foregoing quotation from the decision in the *Freeman* case is deemed sufficient to indicate the nature of that case so far as it need be shown for the purpose of the question under consideration. Broadly speaking, the facts of that case resemble the facts of the case at bar; and, in our opinion, the law announced there controls the case under consideration. The law laid down in paragraph (2-*a*) of the decision in the *Freeman* case was stated in early decisions of the Supreme Court of this State, and has since been followed. See *Eich* v. *State,* 169 *Ga.* 425, 429 (150 S. E. 579). Applying that law to the facts of the case at bar, we hold that the trial judge committed reversible error in failing to charge the law of involuntary manslaughter. Since the theory of the defense which, in our opinion, demanded the charge referred to is raised by the testimony as well as by the defendant's statement to the jury, the contention of State's counsel that "the statement of the defendant is not sufficient to require the judge to charge involuntary manslaughter" has no place in this case.

Special ground 2 is practically the same as special ground 1, and

is controlled adversely to the defendant in error by the conclusion reached in reference to the first special ground. Special ground 3, complaining of the court's charge on the law of "accident or misfortune," is not, in our opinion, meritorious. Furthermore, the principal criticism of it is that it was injurious because of the court's failure to charge the law of involuntary manslaughter. This difficulty will hardly arise upon another trial of the case, in view of our ruling upon the first special ground. Of course the general grounds of the motion for a new trial are not for consideration at this time; and the judgment is reversed solely for the reason that the court failed to charge the law of involuntary manslaughter.

*Judgment reversed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*