*John A. Boykin*, solicitor-general, *J. W. LeCraw*, and *E. A. Stephens*, contra.

## HARRIS *v*. THE STATE.

No. 11739. MARCH 9, 1937. REHEARING DENIED MARCH 22, 1937.

*Shelby Myrick* and *Ulmer & Dowell,* for plaintiff in error.

*M. J. Yeomans, attorney-general, Samuel A. Cann, solicitor-general, Andrew J. Ryan Jr., Ellis G. Arnall,* and *E. J. Clower,* contra.

JENKINS, Justice. ■ A ground in a motion for new trial, in a conviction for murder, that "the court erred in not giving in charge to the jury the law of voluntary manslaughter," is "too vague and indefinite an assignment of error to raise any question for determination by this court." *Smith* v. *State,* 125 *Ga.* 300 (54 S. E. 124) ; *Wilson* v. *State,* 156 *Ga.* 42 (118 S. E. 427), and cit.; *Burley* v. *State,* 158 *Ga.* 849 (3) (124 S. E. 532) ; *Harris* v. *State,* 178 *Ga.* 746 (3) (174 S. E. 240) ; *Parham* v. *State,* 180 *Ga.* 233 (2) (178 S. E. 648)*; Bryant* v. *State,* 180 *Ga.* 238 (178 S. · E. 651).

■ Neither the evidence nor the statement of the accused raised any question save whether the killing was murder or was the result of misfortune or accident. According to the testimony for the accused and according to his statement, the pistol was held by a third person and went off merely by accident when the accused grabbed him and the pistol in trying to prevent the commission of a threatened felony, by keeping such person from firing after that person had pointed his weapon at another person with a threat to shoot. According to the testimony for the State, the killing was murder committed by the deliberate act of the accused in pulling his own pistol out of his bosom and deliberately firing it at the deceased, remarking thereafter with an oath, "I got him." Therefore the law of involuntary manslaughter under the Code, § 26-1009, either in the commission of an unlawful act or in the commission of a lawful act without due caution and circumspection, was not involved under either view of the testimony, and the court did not err in failing to charge the jury thereon, especially where there was no request therefor, and where the court gave the defendant the full benefit as to the defense made by him. *West* v. *State,* 121 *Ga.* 364 (49 S. E. 266) ; *Allen* v. *State,* 134 *Ga.* 380 (67 S. E. 1038) ; *Daniel* v. *State,* 171 *Ga.* 335 (3, 4), 341 (155 S. E. 478). See also *Fair* v. *State,* 171 *Ga.* 112 (2), 116 (155 S. E. 329).

■ The evidence fully authorized the verdict.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*

ON MOTION FOR REHEARING.

JENKINS, Justice. Counsel for the plaintiff in error insist that the statement in the opinion, that, "According to the testimony for the accused and according to his statement, the pistol was held by a third person and went off merely by accident when the accused grabbed the pistol in trying to prevent the commission of a threatened felony, by keeping such person from firing after that person had pointed his weapon at another with a threat to shoot," was unwarranted. Their contention is that, under the evidence, "the pistol might have been in the hands of Jeffrey Harris [the defendant] at the time it was fired." In order to meet this criticism, the language of the opinion has been so amended as to read, "According to the testimony for the accused and according to his statement, the pistol was held by a third person and went off merely by accident when the accused grabbed him and the pistol in trying to prevent the commission of a threatened felony," etc. Neither evidence for the defendant nor his statement tends, however, to incriminate him in the manner of which he now seeks to avail himself in order to escape the consequences of a more serious verdict, which was fully sustained by the evidence. The defendant, in setting forth his acts and conduct in intervening in an affray between other parties by grabbing and holding the only person who was armed, and who was in the act of carrying out his expressed purpose of killing another, does not remotely suggest culpability of any sort on his part. Both the statement and the evidence for the defendant put him in the rôle of a protector of the peace and of human life; while, on the contrary, the evidence for the State was such as to wholly contradict his defense and to show that he drew his own pistol from his bosom, and, after stepping backward, intentionally shot the deceased, remarking as he did so, "I got him," or, as testified by another State's witness, "God damn it, I got the son of a bitch." It necessarily would appear, therefore, that the defendant either deserves commendation for his courageous and praiseworthy efforts to protect the life of another person from a deadly assault, or else should have been adjudged guilty of a deliberate and unjustified homicide. Accordingly, the judge was not compelled or even authorized to inject into the defendant's statement and the testimony submitted in his behalf an element or theory in no wise authorized

170

or hinted at by either. The case is quite different from *Boyd* v. *State*, 136 *Ga.* 340 (71 S. E. 416), *Freeman* v. *State*, 158 *Ga.* 369 (123 S. E. 126), or *Jackson* v. *State*, 43 *Ga. App.* 468 (159 S. E. 293), cited and relied on by defendant's counsel. If it had appeared, as it did in those cases, that the previous controversy as well as the actual affray was between the defendant and the person of whom he claimed to have caught hold in the capacity of a peacemaker, and if in the struggle, as in those cases, the defendant's adversary had been slain, an altogether different case would have been presented. In situations such as existed in the cases cited, such incriminating circumstances, despite the defendant's contention as to the accidental discharge of the weapon, might well render applicable the doctrine of involuntary manslaughter. The ruling in the *Jackson* case was planted squarely on the *Freeman* case, where it was held that the court erred in declining the defendant's request to charge the jury on the law of involuntary manslaughter. In that case a wife was tried for the homicide of her husband. There was evidence going to show that "her husband came to the door and said, 'Find me my gun,' and she said, 'What for?' He said, 'I am going to kill you,' and she said, 'What?' and he said, 'Yes, I am,' and then he slapped her, and she said, 'Don't slap me,' and he said, 'I will kill you,' and he took up the gun and they tusseled over it, and the gun fired." The court distinguished its ruling from those in cases where the evidence for the defendant, if accepted, would have demanded a verdict of acquittal. The same reasoning applies to the *Boyd* case. *Rehearing denied.*