## TERRITORY OF HAWAII *v.* YOSHITAKA OTA, ALSO KNOWN AS JACK OTA, ALSO KNOWN AS FAT OTA.

No. 2484.

SUBMITTED APRIL 14, 1942.          DECIDED JUNE 10, 1942.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY KEMP, C. J.
(Peters, J., dissenting.)

The defendant Ota was tried in the circuit court of the fourth circuit on an information in two counts, in which it was charged by the first count that on or about the 26th day of September, 1940, he did "unlawfully and maliciously make a libel applying to and concerning one Martin Pence * * * by writing, printing and devising * * * a certain libelous writing with the intent that the said libelous writing should be published, which said libelous writing directly tended to injure the fame, reputation and good name of him, the said Martin Pence, and bring him, the said Martin Pence, into disgrace, abhorrence, odium, hatred, contempt and ridicule, the tenor of said libelous writing being as follows: 'ATTENTION: Voters of American citizens of Japanese Ancestry.

'Today, the American citizens of Japanese Ancestry is suspected of their loyalty to the government of the United States of America, is questioned as evidenced by the passage in the United States House of Representatives of a Bill relating to an amendment to the Naturalization Law. The original intention of said Bill was directed against American citizens of Japanese Ancestry born and residing in the Territory of Hawaii or American possessions. It was amended by our able Delegate, Honorable Samuel Wilder King, who made said act applicable also to all citizens of the continental United States. The Bill provides any citizens of foreign extractions visiting the Country of his parents for more than 6 months have forfeited his American citizenship.

'This suspicion of citizens of Japanese Ancestry was brought about ever since the desertion by an unworthy Peru-born (not American born) dual citizen MARIO SATO from the training squadron "H.I.M.S. YAGUMO," which visited Hilo last year. When Mario Sato deserted the Japanese Navy Armada, according to his own admission to local newsmen, he went to the home of County Attorney Martin Pence. The Honorable Bunjiro Kudo, Vice-Consul-General of Japan immediately appealed to Sheriff Henry K. Martin, who is also Deputy U. S. Marshal for the Island of Hawaii. The Office of the Sheriff immediately directed a search of Mario Sato, a military deserter. After 20 long valuable hours had elapsed, Sheriff Martin was informed that Mario Sato was at the home of Martin Pence. The U. S. Deputy Marshal Henry K. Martin made an inquiry of Martin Pence who admitted that Mario Sato was with him.

'WE ASK, WHY MARTIN PENCE, A COUNTY PROSECUTOR, WHO HAD NO JURISDICTION IN THIS MATTER HARBORED OR CONCEALED A FOREIGN MILITARY DESERTER (AN ALIEN) INELIGIBLE TO ENTER THE UNITED STATES, WITHOUT FIRST TURNING THE MAN OVER TO THE UNITED STATES MARSHAL, OR TO THE LOCAL U. S. IMMIGRATION INSPECTOR!

'Ever since the occurance of this case, expatriated American citizens, such as Seichi Miyasato and Shigero Haraguchi, who had been employed since April 6, 1937 and March 13, 1937, respectively, were discharged from their employment at the Naval Reservation at Kaneohe, at the request of Naval authorities.

'This situation of suspicion was brought about by Martin Pence who assisted Mario Sato, and they are responsible for the unfounded suspicion of American citizens of Japanese Ancestry by the United States Government.

Martin Pence not only placed citizens of Japanese Ancestry in an embarrassing situation with United States government, but likewise, insulted the Japanese government when he concealed a Peru-born (not American born) alien MARIO SATO, who is a military "deserter." The finger of guilt points more to Martin Pence than the ignorant Mario Sato.' "

We have not quoted the alleged libelous writing in full but the remainder of the writing merely urged voters of Japanese ancestry to vote against Martin Pence for the office of county attorney because of the alleged facts. After quoting the writing in full, the information concludes as follows:

"That the paragraph in said libelous writing contained, reading as follows:

'WE ASK, WHY MARTIN PENCE, A COUNTY PROSECUTOR, WHO HAD NO JURISDICTION IN THIS MATTER HARBORED OR CONCEALED A FOREIGN MILITARY DESERTER (AN ALIEN) INELIGIBLE TO ENTER THE UNITED STATES, WITHOUT FIRST TURNING THE MAN OVER TO THE UNITED STATES MARSHAL, OR TO THE LOCAL U. S. IMMIGRATION INSPECTOR!'

clearly and directly charged the said Martin Pence with the criminal offense of Harboring and Concealing an Alien in Violation of Chapter 29, Section 8 of Volume 39 United States Statutes 880 (Title 8, Section 144, U.S.C.A.); contrary to Chapter 196, Revised Laws of Hawaii 1935."

The second count charged the defendant with the malicious publication of the same libelous writing.

The defendant was found guilty on both counts by the verdict of a jury. He is here on exceptions.

Defendant, in his opening brief, says that he relies upon exceptions numbered 3, 6, 7, 8, 9, 10 and 11, con-

84

tained in his bill of exceptions. Oral argument was waived.

The following is a brief statement of the exceptions enumerated:

3. Error in denying defendant's motion for a directed verdict when the prosecution rested. 6. Error in refusing to strike from the information the paragraph alleging that the article charged Martin Pence with the criminal offense of harboring and concealing an alien, etc. 7. The giving of prosecution's instructions 6, 7, 8, 11 and court's own instructions in lieu of prosecution's requested instructions numbers 4 and 5, and refusing defendant's requested instructions 1, 6 and 7. 8. Exception to the verdict as contrary to law, the evidence and the weight of the evidence. 9. Error in denying defendant's motion to set aside the verdict, to arrest judgment and discharge the defendant. 10. Exception to the sentence. 11. Error in denying defendant's motion for a new trial.

His argument is presented under two heads: "I. The Court erred in denying the motion to set aside verdict, to arrest judgment and for the discharge of the defendant," and "II. The Court erred in denying defendant's motion for new trial." The grounds in the motion for a new trial include the grounds set up in the motion for arrest of judgment.

Only such grounds as have been urged will be considered. The defendant's specifications of error are as follows: (A) The verdict, judgment and sentence were rendered and imposed pursuant to erroneous instructions and rulings of the court. (B) The verdict is contrary to law, the evidence and the weight of the evidence. (C) The verdict is clearly, palpably, decidedly, and manifestly the result of bias and prejudice.

If ground (B) is not sustained, ground (C) is clearly unfounded. A verdict supported by sufficient evidence cannot be said to be the result of bias and prejudice.

Ground (B) cannot be sustained if there is any substantial evidence more than a mere scintilla to sustain the verdict. (*Ter.* v. *Lam Bo,* 23 Haw. 718.) The making and publishing of the writing in question having been admitted by the defendant and it appearing that Martin Pence was, at the time of the publication, county attorney of the county of Hawaii and a candidate for re-election, his admitted or proved conduct was a legitimate subject of critical comment. The privilege of critical comment does not include, however, the right to make and publish false charges for that would exact of the public servant too high a price for the privilege of service. (*Post Pub. Co.* v. *Hallam,* 59 Fed. 530, 540.) Hence, the only issue of fact which required submission to the jury was the issue raised by the attempt of the defendant to prove the truth of the matters charged in the publication. The evidence produced by the defendant on the issue of the truth of the charge that Martin Pence harbored or concealed an alien ineligible to enter the United States was, to say the least, very weak. On the other hand, the uncontroverted evidence contra is that Mr. Pence first saw Mario Sato, described in the publication as a military deserter and an alien ineligible to enter the United States, at 7:30 o'clock on Sunday evening and that early the next morning Mr. Pence called upon and had an interview with the local immigration inspector, who, as a result of said interview, called at the office of Mr. Pence in the afternoon of the same day and there met Mario Sato. When the inspector left Mr. Pence's office Sato accompanied him but was not taken into official custody until the following Thursday. This is substantial evidence and refutes the claim of the defendant that the uncontroverted evidence shows that Mr. Pence harbored Mario Sato or concealed him from the immigration authorities. Grounds (B) and (C) are therefore without merit.

The argument under ground (A) is devoted to an attack upon the instructions of the court to the jury. In order to properly pass upon the questions raised as to the instructions, it is necessary to consider all instructions, including those given at the request of the defendant, having a bearing on the questions raised. The instructions to be considered consist of those given at the request of the defendant; those requested by the defendant which the court refused to give; those given at the request of the prosecution over the objection of the defendant; one of the court's own instructions given over defendant's objection; and two other instructions given by the court on its own motion, all of which must be considered to gain a fair idea of the theory upon which the case was presented at the trial.

Our statute, R. L. H. 1935, § 6050, defines a libel thus: "Libel Defined. A libel is a publication in writing, print, or by a picture, statue, sign, or a representation, other than by words merely spoken, which directly tends to injure the fame, reputation or good name of another person, and bring him into disgrace, abhorrence, odium, hatred, contempt or ridicule, or to cause him to be excluded from society."

Section 6054 provides: "Malice. Malice is shown, in respect of libel, by making a publication or communicating it to others, wilfully and purposely to the prejudice and injury of another. Hatred or ill will towards the party injured is not essential to libel."

Section 6055 provides: "Truth as Defense. In every prosecution for writing or publishing a libel, the defendant may give in evidence in his defense upon the trial the truth of the matter contained in the publication charged to be libelous; PROVIDED, however, that such evidence shall not be deemed a justification, unless it shall be further made to appear on the trial that the matter was published with good motives and for justifiable ends."

All of said statutory provisions were included without objection in the instructions to the jury and at defendant's request the court gave to the jury defendant's instructions numbers 2 and 3 but refused his instructions numbers 1, 6 and 7.

Defendant's instructions given are as follows:

2. "The Court instructs the Jury that the burden of proof rests upon the prosecution to prove to the satisfaction of the Jury beyond all reasonable doubt, each and every material allegation of the Charge, and unless this has been done, the Jury should find the defendant 'not guilty'."

3. "The Court instructs the Jury that the defendant has the right to give in evidence in his defense the truth of the matter contained in the publication charged; and if you find from the evidence that the matter so charged in the publication were true and that the same were published with good motives and for justifiable ends, then it is your duty to return a verdict of acquittal."

Defendant's instruction number 1 was for a directed verdict of not guilty, and his contention is disposed of adversely to him by what we have already said. His instruction number 6 defined the purpose of innuendoes. There were no innuendoes to justify such an instruction. The refusal to give the requested instructions was therefore proper.

Defendant's instruction number 7, refused, follows: "I further charge you, gentlemen, that the defendant is presumed to be innocent until his guilt is established by such evidence as will exclude every reasonable doubt; therefore, the law requires that no man shall be convicted of a crime until each and every one of the jury is satisfied by the evidence in the case, to the exclusion of every reasonable doubt, that the defendant is guilty as charged. So,

in this case, if the jury entertain any reasonable doubt of the defendant's guilt, they should acquit him, or, if any of the jury, after having duly considered all the evidence, and after having consulted with his fellow jurymen, should entertain such reasonable doubt, the jury cannot, in such case, find the defendant guilty, for the reason that the jury's verdict must be unanimous."

The exception to the refusal to give defendant's requested instruction number 7 must be regarded as having been abandoned. Oral argument was waived and the case submitted on the briefs. In a twenty-four page brief the only mention of this exception consists of a copy of the proffered instruction and the following statement: "The Court's refusal to give this instruction was prejudicial and constituted reversible error." He cited, without comment, *Kimble* v. *Kizer,* 59 F. (2d) 626. The cited case was an action for damages for breach of contract in which no instruction of similar import was either given or refused. He did not discuss the instruction or attempt to apply the authority cited. We think therefore that the rule of *Paris* v. *Magoon,* 14 Haw. 612, that only those exceptions which have been argued will be considered, applies, and as said on motion for rehearing in said case, 14 Haw. 638, "The court cannot go through numerous exceptions and decide upon them all when apparently they have been abandoned by counsel. It is true that the statement of facts in the brief and perhaps at the argument included facts upon which the point of law might be based but the court is not bound to raise for itself and decide all points that the facts might suggest when counsel ignore them." (See also *Sylva* v. *Wailuku Sugar Co.,* 19 Haw. 602, 610, *et seq.*) An exception to the foregoing is that error apparent from the record which goes to the jurisdiction of the trial court will be corrected by this court, even though the appellant sub-

mits the case without a brief or argument. (*Flores* v. *Maka*, 11 Haw. 512.)

The court also gave over defendant's objection the prosecution's instructions numbers 6, 7, 8 and 11, as follows:

6. "The Court instructs you that the writing contained in Prosecution's Exhibits 'A' and 'B' herein is, taken as a whole, in and of itself libelous. The defendant has admitted both the making and the publishing of the writing set out in these charges and evidenced by Prosecution's Exhibits 'A' and 'B.' You are therefore instructed that legal malice was inherent in the defendant's admissions of willful and purposive publication and circulation. Therefore, it will be your duty to find the defendant guilty as charged—unless you further find by a preponderance of the evidence adduced that the statements of fact in said writing are true, and also that said writing and the whole thereof was made and published by the defendant with good motives and for justifiable ends."

7: "The laws of the United States make it a criminal offense, amounting to a felony, for any person—to conceal or harbor—in any place—an alien not duly admitted by an immigration inspector or not lawfully entitled to enter or to reside within the United States. (c. 29, Sec. 8, 39 Statutes 880, Feb. 5, 1917; c. 321, Sec. 335, 35 Statutes 1152.) In this connection you are instructed that the meaning of the words 'harbor' and 'conceal' is to clandestinely shelter, succor, and protect improperly admitted aliens; to shelter an alien from immigration authorities and shield an alien from observation to prevent his discovery as an alien. (Susnjar v. U. S., 27 Fed. 2d, 223; U. S. v. Smith, 112 Fed. 2d, 83 (85).) You are further instructed that a publication in writing or print which charges another with the commission of a crime of infamous nature is libelous per se. In this connection you are instructed

that it is not necessary that the crime charged be made in expressed terms, nor is it necessary for the publication to contain a direct and open charge. If, taking the words used in their ordinary acceptation, they would naturally and presumably be understood as accusing one of such a crime, no matter how indirectly, they are libelous."

8. "You are instructed that the defendant is charged with unlawfully making a libel by writing, printing or forming, or aiding or assisting in the writing, printing or forming of a certain writing as set out in the charge herein, with the intent that the writing should be published; and the defendant is further charged with maliciously putting said writing and printing into circulation, for the purpose of and in fact making it known to others. The Court instructs you that said writing contained in Prosecution's Exhibits 'A' and 'B' herein is, taken as a whole, in and of itself libelous. And I instruct you that, if you believe, beyond a reasonable doubt, the writing in question was intended to, and did, refer to Martin Pence, as charged, and the defendant herein wrote, printed, devised or aided and assisted in the writing and printing and devising of such libelous writing with the intent that such libelous writing should be published, or if you find that the defendant herein maliciously put into circulation, promulgated and exhibited said writing for the purpose of making it known to others, it will be your duty to find the defendant guilty as charged—unless you further find by preponderance of evidence adduced, that the statements of fact in said writing are true, and also that said writing and the whole thereof, was published with good motives and for justifiable ends."

11. "It is proper to remind you that this is not an action brought by Martin Pence against Yoshitaka Ota to recover damages for injuries or supposed injuries sustained by the alleged libel. It is not a private, but a pub-

lic prosecution, conducted by the people of the Territory purely for public purposes. The publication of a libel has a tendency to provoke a breach of the public peace, which the law is solicitous to maintain and preserve. Persons feeling themselves injured by such publications are incited, in many instances to seek satisfaction by personal violence inflicted upon the supposed libeler. It is the precautionary policy of the law, in the interest of the preservation of the peace of society, to discourage such violent remedies, involving a breach of the peace; and the law has therefore provided for the punishment of the libeler, as being one who wantonly puts the public peace at hazard, by printing and publishing untrue and malicious attacks on private character." This instruction was excepted to but has not been urged or even mentioned in his brief and must therefore be considered abandoned.

The court also instructed the jury on its own motion, without objection from the defendant, as follows: "You are instructed that public officials and their acts and candidates for public office and their character and reputation, are the legitimate subjects of fair and reasonable comment. Such comment may descend to ridicule, sarcasm and even invective, without sacrifice of the immunity of the privilege. Criticism of the truth may be severe, harsh, bitter or sarcastic; even caustic if the facts warrant it. But the right of discussing matters of public interest does not extend to the making of false statements of fact. Freedom of discussion rather than of statement is the criterion. The right to comment does not include the right to make false statement. Nothing short of the truth will suffice."

"A reasonable doubt, gentlemen, is just such a doubt as the term implies. It is a doubt for which you can give a reason. It must not arise from any merciful disposition of kindly, sympathetic feeling or desire to avoid perform-

ing a possibly disagreeable duty. It must be a substantial doubt such as an honest, sensible fairminded man might with reason entertain consistently with a conscientious desire to ascertain the truth and to perform a duty. It is such a doubt as would cause a man of ordinary prudence, sensibility and decision in determining an issue of great concern to himself to pause or hesitate in arriving at his conclusion. It is a doubt which is created by the want of evidence or maybe by the evidence itself. It is not, however, a speculative imaginary or conjectural doubt."

The defendant excepted to the giving of the court's instruction which follows: "You are instructed that it is provided by Section 6054 of the Revised Laws of Hawaii that 'Malice is shown in respect of libel by making a publication or communicating it to others, wilfully and purposely to the prejudice and injury of another. Hatred or ill-will towards the party injured is not essential to libel.' You are further instructed with regard to this particular case that the article alleged in both counts of the information to be libelous, to-wit, Exhibits A and B, is an article which is libelous per se, and that the defendant, having admitted the publication of the same, to third parties, legal malice is, in point of law, inherent and is presumed to exist."

We shall now consider prosecution's instructions numbers 6 and 8. The argument is that said instructions are "inaccurate, incomplete, ambiguous, misleading, confusing, and therefore clearly prejudicial"; that by said instructions "the Court decided upon a question of fact and withdrew said issue of fact from the decision and province of the jury. The issue of fact being 'the maliciously putting into circulation prosecution's Exhibits A and B,'" and charging as a question of law that "said issue of fact is libelous unless the jury should find by a preponderance of the evidence, that the statements contained in said exhibits

are true and the same published with good motives and for justifiable ends." He also complains that said instructions failed to define malice as used in said phrase, "maliciously putting into circulation," and in failing to instruct the jury on the different kinds and degrees of malice or to define the "meaning as to what constitutes 'preponderance of evidence.'"

First, as to failure of the court to define the terms used: It is well-settled that failure of the court to define the legal terms used, when not requested to define them, is not error. (*Sylva* v. *Wailuku Sugar Co., supra,* at 681, 683.) If the defendant deemed such definitions necessary, it was his duty to call the matter to the court's attention by requesting appropriate instructions. Having failed to do so, he cannot complain of the failure of the court in that regard.

No attempt is made by the defendant to apply any of his criticisms of said instructions to his case, other than by incorporating in his brief a quotation from the minority opinion in the case of *Ter.* v. *Crowley,* 34 Haw. 774, 842, to the effect that in a prosecution for publishing a libel, the defendant is not required to prove the truth of the matter contained in the publication charged to be libelous but is entitled to an acquittal if from the evidence a reasonable doubt arises in the minds of the jury as to the truth of the matter contained in the publication and as to whether it was published with good motives and for justifiable ends.

In view of defendant's requested instruction number 3, which the court gave and in which the jury were told that "the defendant has the right to give in evidence in his defence the truth of the matter contained in the publication charged; and if you find from the evidence that the matter so charged in the publication were true and that the same were published with good motives and for justifiable ends, then it is your duty to return a verdict of acquittal," it is

at least questionable whether the defendant is in a position to complain of the instruction on the point raised by the citation from the minority opinion in the *Crowley* case. It is apparent that the defendant is attempting to raise that question in this court, though it is not clear that he raised it in the court below. His instruction number 3 indicates that he tried his case on the theory that he had the burden of proving the truth of the matters charged in the publication, as well as good motives and justifiable ends, and not merely the burden of raising a reasonable doubt in the minds of the jury as to said matters. However, his presentation of his general exception to the two instructions under consideration, as shown by his citation of the minority opinion in the *Crowley* case, is a direct attack upon the majority opinion in that case. We shall, therefore, further examine the question there decided.

Chapter 196, R. L. H. 1935, which defines and otherwise treats the subject of libel, has come down unchanged from the Penal Code of 1850, except for a change in the punishment for making and publishing a libel. (Penal Code 1850, c. 33.) Section 6050 of said chapter, which defines a libel, and section 6055, which grants a defendant the right to give in evidence in his defense upon the trial the truth of the matter contained in the publication charged to be libelous, are in the exact words of paragraphs 1 and 5 of chapter 33 of the Penal Code of 1850. The Penal Code of 1850 was compiled by Honorable William L. Lee, chief justice of the supreme court, in compliance with a resolution of the House of Nobles and Representatives, passed September 27, 1847, and his compilation was adopted by the House of Nobles and Representatives on June 21, 1850. In transmitting his compilation to the House of Nobles and Representatives the compiler stated: "I am greatly indebted to the labors of the commissioners appointed to prepare a penal code for Massachusetts, as

given in their report, and also to those of Mr. Livingston in the penal code of Louisiana. From both of these able works I have borrowed largely." The whole of chapter 33 of the penal code compiled by Chief Justice Lee and adopted as above stated was clearly borrowed from the Massachusetts penal code of 1826, referred to in his report, and has come down to us unchanged as chapter 196 of our present Revised Laws.

In 1845, in the case of *Commonwealth* v. *Bonner,* 9 Metc. 410, the supreme court of Massachusetts construed the Massachusetts statute, later borrowed by our legislative body. The court said: "The court are of opinion that the charge of the judge of the court of common pleas was strictly correct. If a publication be libellous, that is, be such as to bring the person libelled into hatred, contempt and ridicule amongst the people, malice is presumed from the injurious act. But by Rev. Sts. *c.* 133, § 6, 'in every prosecution for writing or publishing a libel, the defendant may give in evidence, in his defence upon the trial, the truth of the matter contained in the publication charged as libellous; provided, that such evidence shall not be deemed a sufficient justification, unless it shall be further made to appear, on the trial, that the matter charged to be libellous was published with good motives, and for justifiable ends.' Nothing can be more explicit. The judge, therefore, was right in directing the jury that, after the publication had been shown to have been made by the defendant, and to be libellous and malicious, the burden was on the defendant, not only to prove the truth of the matter charged as libellous, but likewise that it was published with good motives, and for justifiable ends."

The Massachusetts statute had also been construed in part by the same court in 1834 in the case of *Commonwealth* v. *Snelling,* 15 Pick. 321, where the court, at pages 327 and 328, said:

"By *St.* 1826, *c.* 107, it is provided, that in every criminal prosecution for libel, it shall be lawful for any defendant, on trial, to give in evidence in his defence, the truth of the matter contained in the publication charged as libellous; under this proviso however, that such evidence shall not be a justification, unless on the trial it shall be further made satisfactorily to appear, that the matter charged as libellous was published with good motives and for justifiable ends. · It is obvious, from the terms of the statute, that it is optional with the party indicted, whether he will or will not avail himself of this ground of defence. The statute makes no new rule, in regard to the indictment, or the mode of proof on the part of the prosecution. Proof that the matter was published by the defendant and was libellous, would still constitute a *prima facie* case, and the law would presume malice from the libellous character of the publication. It appears to be the main intent of the statute, to enlarge the grounds of defence, and to allow the defendant, at his option, to meet the averment and rebut the presumption of malice, by proving, if he can, that the matters so published are true, and were published with good motives and for justifiable ends."

For an enlightening discussion of the history, purpose and effect of the Massachusetts libel statute of 1826 and the effect of the 1855 amendment thereof, see *Perry* v. *Porter,* 124 Mass. 338, 340, 341 (1878), where the court said:

"At common law, in private actions for libel or slander, proof of the truth is a justification. But in public prosecutions the rule was otherwise, and it was accordingly held in *Commonwealth* v. *Blanding,* 3 Pick. 304, that on an indictment for libel the truth of the matter published was not admissible in evidence. Probably in consequence of this decision, the Legislature enacted in 1827 that in every prosecution for a libel the defendant might give in evidence in his defence the truth of the matter

charged to be libellous, but that such evidence should not be a justification unless it was made to appear that such matter was published with good motives and for justifiable ends. St. 1826, c. 107, § 1.

"This was reenacted in the Rêv. Sts. c. 133, § 6, and remained the law until 1855, when it was provided that 'in every prosecution, and in every civil action for writing or for publishing a libel, the defendant may give in evidence, in his defence upon the trial, the truth of the matter contained in the publication charged as libellous; and such evidence shall be deemed a sufficient justification, unless malicious intention shall be proved.' St. 1855, c. 396, § 1.

"This provision was without change incorporated into the Gen. Sts. c. 129, § 77. It is true that all the prior legislation had been, not in the direction of limiting the effect of proof of the truth in civil actions, but in the direction of enlarging its effect in favor of the defendant in a criminal prosecution. The St. of 1826 for the first time permitted the truth to be given in evidence as a justification in criminal prosecutions. Under its provisions, the burden of proof was upon the defendant to show not only the truth of the matter charged to be libellous, but also that it was published with good motives and for justifiable ends. *Commonwealth* v. *Bonner,* 9 Met. 410.

"The St. of 1855 goes further in favor of defendants in criminal prosecutions and throws the burden on the government, if the defendant establishes the truth, of proving that the publication was made with malicious intention. In this respect, it accords with the general tendency of modern legislation to make the proof of the truth more effective in the defence of a prosecution for libel."

This court has several times announced the familiar rule of construction that the adoption of a statute from another jurisdiction after said statute has been construed carries with it the construction placed upon it by the

courts of the jurisdiction from which it was borrowed. (*Carter* v. *Gear*, 16 Haw. 242, *aff'd* 197 U. S. 348, 49 L. ed. 787; *Middleditch* v. *Kalanianaole*, 18 Haw. 272.) In *Territory* v. *Chong Chak Lai*, 19 Haw. 437, 439, it is said: "The imported construction should prevail only in so far as it is in harmony with the spirit and policy of the general legislation of the home State."

From the foregoing we conclude that the construction placed upon the Massachusetts statute by its courts prior to 1850 must be deemed to have been adopted by the Kingdom of Hawaii and likewise by the Congress of the United States, when the libel statute was retained by sections 6 and 7 of our Organic Act, unless the construction is inconsistent with the Constitution of the United States or out of harmony with the spirit and policy of the general legislation of the Territory.

The prior constructions to which we have referred merely hold that the burden of proof as to truth, good motives and justifiable ends, was on the defendant without mention of the measure of proof required of him. However, the instruction complained of fixed the lowest measure of proof known to the law to establish a fact—the least requirement consistent with the burden of proof.

The opinion in the *Crowley* case was filed February 4, 1939. The Territorial legislature met the next day and continued in session until the 26th day of April and evidenced no dissatisfaction with the construction placed upon the statute. Since then there has been the regular and called session of 1941, without any attempt to amend the statute there construed. While this legislative inaction does not amount to legislative construction, it does indicate a lack of active disagreement with the majority opinion in the *Crowley* case. It is a common practice of legislative bodies to enact laws to circumvent judicial constructions deemed by the legislators to be contrary to the

true meaning of the statute construed. Conversely, legis-
lative inaction tends to indicate agreement.

The definition of a libel contained in section 6050 is to
all intents and purposes the common law definition of a
libel. But for section 6055 a defendant in a public prose-
cution would not be entitled to give in evidence upon the
trial either the truth of the matters contained in the pub-
lication or evidence of his motives or purposes in making
or publishing the libel. That was the common law rule.
(Newell, Slander and Libel [4 ed.], § 700, p. 768.) As
said by the court in *Commonwealth* v. *Snelling, supra,* the
main intent of the statute (§ 6055) was to enlarge the
grounds of defense and to allow the defendant at his op-
tion to rebut the presumption of malice by proving, if he
can, that the matters published are true and were pub-
lished with good motives and for justifiable ends. It is
difficult to see how a statute designed to make available
to a defendant a defense which but for said statute would
not be available to him could be inconsistent with the Con-
stitution of the United States or out of harmony with the
spirit and policy of general legislation of the Territory.

The Louisiana statute involved in *State* v. *Bienvenu,*
43 La. 239 (36 La. Ann. 378), contains substantially the
same provision as section 6055 of our statute. In that
case the instructions are set forth in full "as an admirable
compendium of the law of libel." One of the instructions
told the jury that, "If you believe beyond a reasonable
doubt, from the evidence, that the defendant composed and
published the printed pamphlet as charged in the indict-
ment, it is no defense simply to show the truth of the mat-
ter published, but the defendant must go further and prove
by a preponderance of evidence, that the matters charged
in the alleged libel were not only true, but that he, the
defendant, acted with good motives and for a justifiable

end, and that he had some purpose in view that was justifiable."

The defendant also complains of prosecution's instruction number 7. This instruction told the jury that the laws of the United States make it a criminal offense amounting to a felony for any person to conceal or harbor an alien not duly admitted by an immigration inspector. Said instruction then defined the meaning of the words "harbor" and "conceal." The accuracy of the definition is not questioned. By said instruction the jury was further told that "a publication in writing or print which charges another with the commission of a crime of infamous nature is libelous per se. In this connection you are instructed that it is not necessary that the crime charged be made in expressed terms, nor is it necessary for the publication to contain a direct and open charge. If, taking the words used in their ordinary acceptation, they would naturally and presumably be understood as accusing one of such a crime, no matter how indirectly, they are libelous."

The section of the United States statute referred to by the court as defining a criminal offense amounting to a felony provides *inter alia*: "any person * * * who shall bring into or land in the United States * * * or shall conceal or harbor * * * any alien not duly admitted by an immigrant inspector or not lawfully entitled to enter or to reside within the United States, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by fine not exceeding $2000 and by imprisonment for a term not exceeding five years for each and every alien so landed or brought in * * * ." (U.S.C.A., tit. 8, § 144, p. 140.) It is Hornbook law that a publication other than by words spoken which imputes to a person the commission of a criminal offense which will, in case the imputation is true, subject the party charged to punishment for

a crime "involving moral turpitude" or will subject such party "to an infamous punishment," is a libel. (Newell, Slander and Libel [4 ed.], § 9.)

It cannot be successfully maintained that the publication involved in this case did not impute to Martin Pence the commission of a criminal offense and if the imputation were true, would, whether it charged a crime "involving moral turpitude" or not, subject him "to an infamous punishment," to wit, imprisonment for a term not exceeding five years.

Defendant asserts that by this instruction "the court invaded the province of the jury on the issue of fact raised at the trial, to wit, 'to harbor and conceal an alien from immigration authorities.'"

The argument is that the defendant adopted the words "harbor" and "conceal" as they are usually understood by a layman and that to characterize the charge as libelous *per se* when confronted by the defense of truth is an unwarranted comment by the court. The argument proceeds on the theory that a preponderance of the evidence shows that Martin Pence did harbor and conceal Mario Sato from the immigration authorities and that the court, by said instruction, suggested, urged and coerced the jury to find the defendant guilty, notwithstanding the defendant's proof of the issue of truth by a preponderance of the evidence.

The obvious answer to this argument is that the defendant's characterization of the evidence is not borne out by the record and the issue of truth was left to the jury under instructions requested by both the defendant and the prosecution, and the question of whether or not the charge, if untrue, was libelous is a question of law to be decided by the court.

Our statute provides that "all questions of law shall be

decided by the court and all questions of fact by the jury."
(R. L. H. 1935, § 3742.)

A casual reading of the instruction under discussion will disclose that it dealt exclusively with questions of law and did not even remotely suggest that the jury should find the defendant guilty if the charge of harboring and concealing was found from the evidence to be true. In fact, the characterization by the court of the writing or print as libelous *per se* was conditional upon a finding by the jury that the words complained of would naturally and presumably be understood as accusing one of such a crime, and other instructions, particularly defendant's number 3, informed the jury of the effect of proof of the truth of the charge. The only one of the court's own instructions of which the defendant complains quoted R. L. H. 1935, § 6054, and informed the jury that the defendant having admitted the publication of the article "which is libellous per se * * * legal malice is, in point of law, inherent and is presumed to exist."

The defendant contends that said instruction "is ambiguous, incomplete, inaccurate and arbitrary, in that it fails to specify that malice (in law) is prima facie presumed to exist—and/or that said presumed malice is a rebuttable presumption upon the defense of truth, (2) privilege (3) liberty of the press of free speech; and/or upon evidence of good motives and/or justifiable ends."

The instruction is not ambiguous. It is couched in clear and easily understood language. We fail to see wherein it is arbitrary. This leaves for discussion the claim that it is incomplete and inaccurate. A single instruction is not required to contain all of the applicable law. All of the instructions must be considered in determining the question of completeness.

The first instruction given by the court of its own motion informed the jury in substance that the act and con-

duct of public officials and candidates for public office and their character and reputation are legitimate subjects of comment which may descend to ridicule, sarcasm and even invective, without sacrifice of the immunity of privilege, but that the right to comment does not include the right to make false statements of fact; that nothing short of the truth will suffice.

When the two instructions are read together, they do not appear to be either inaccurate or incomplete. The jury was clearly informed by the instructions as a whole that if they found from the evidence that the charges contained in the article in question were true it was privileged and that the severity of the comment could not deprive the defendant of the immunity which the law affords those who publish the truth about public officials and candidates for office.

That the court's instruction just referred to correctly stated the law and refutes the contention of defendant that Mr. Pence's public character clothed the whole of the publication with privilege unless express malice was proved is supported by the opinions in *Post Pub. Co.* v. *Hallam,* 59 Fed. 530, 541, *supra,* where the opinion was delivered by Circuit Judge Taft (afterwards Chief Justice of the United States) and in *Burt* v. *Advertiser Newspaper Co.,* 154 Mass. 238, 28 N. E. 1, where the opinion was delivered by Mr. Justice Holmes (afterwards a justice of the Supreme Court of the United States). Each of these eminent jurists, discussing conditionally privileged publications, quoted with approval the same passage from the opinion of Lord Chancellor Herschell in *Davis* v. *Shepstone,* 11 App. Cas. 187, 190, as follows:

"There is no doubt that the public acts of a public man may lawfully be made the subject of fair comment or criticism, not only by the press, but by all members of the public. But the distinction cannot be too clearly borne in

mind between comment or criticism and allegations of fact, such as that disgraceful acts have been committed or discreditable language used. It is one thing to comment upon or criticise, even with severity, the acknowledged or approved acts of a public man, and quite another to assert that he has been guilty of particular acts of misconduct. In the present case the appellants, in the passages which were complained of as libellous, charged the respondent, as now appears, without foundation, with having been guilty of specific acts of misconduct, and then proceeded, on the assumption that the charges were true, to comment upon his proceedings in language in the highest degree offensive and injurious. Not only so, but they themselves vouched for the statements by asserting that, though some doubt had been thrown upon the truth of the story, the closest investigation would prove it to be correct. In their lordships' opinion there is no warrant for the doctrine that defamatory matter thus published is regarded by the law as the subject of any privilege."

Finding the exceptions urged to be without merit, the same are overruled.

*W. C. Achi* for the defendant.

*T. Okino,* Deputy County Attorney, County of Hawaii, for the Territory.

### DISSENTING OPINION OF PETERS, J.

The same situation developed here as in the case of *Ter.* v. *Crowley,* 34 Haw. 774.

As a comment upon the acts of a public officer seeking re-election, the publication was qualifiedly privileged. Where a publication is qualifiedly privileged good motives and justifiable ends are presumed, providing the statements of fact contained therein are true. If the statements of fact contained in the publication are true the

defense permitted by R. L. H. 1935, § 6055, is complete. This is so because the facts showing malice under R. L. H. 1935, § 6054, are not present.

The court charged the jury in effect that the burden of proof rested upon the defendant to show by a preponderance of the evidence the absence of facts showing malice under section 6055, *supra,* that is, truth, good motives and justifiable ends. The burden on the contrary was on the prosecution to prove by the usual rule obtaining in criminal cases, to wit, proof beyond a reasonable doubt, the presence of facts showing malice including the falsity of the facts contained in the publication. The publication being qualifiedly privileged proof of good motives and justifiable ends was unnecessary.

In this respect, similarly as in the *Crowley* case, the court committed error. I deem it unnecessary to enlarge upon what was said by me upon this subject in that case.

Both the *Bonner* case and the *Snelling* case cited by the majority recognize that evidence of truth, good motives and justifiable ends are in rebuttal of legal malice. In the *Snelling* case the court said: "It appears to be the main intent of the statute, to enlarge the grounds of defence, and to allow the defendant, at his option, to meet the averment and rebut the presumption of malice, by proving, if he can, that the matters so published are true, and were published with good motives and for justifiable ends." (p. 328.) The *Bonner* case is to the same effect. While the personnel of the Massachusetts court was different in each case Chief Justice Shaw was the author of both opinions. Neither case, however, holds in direct terms that the evidence of truth and good motives and justifiable ends must preponderate. The personnel of the court at the time that the *Bonner* opinion was rendered was the same as when the case of *Commonwealth* v. *Rogers,* 7 Metc. (Mass.) 500, was decided. In the *Rogers* case the court

held, Chief Justice Shaw also being the author of the opinion, that where in a criminal case, the defense of insanity is interposed, the burden of proof was upon the defendant to show insanity by a preponderance of the evidence. The reasoning in the *Rogers* case was rejected by the United States Supreme Court in *Davis* v. *U. S.*, 160 U. S. 469, 481, as against the weight of authority and contrary to the generally accepted rule obtaining in criminal cases that the defendant is presumed innocent of the crime charged until his guilt has been established beyond all reasonable doubt. Requiring a defendant in a criminal case to prove his innocence by any degree of proof is contrary to the weight of authority.[1]

---

1 *Rayburn* v. *State*, 63 S. W. (Ark.) 356; *Lovejoy* v. *State*, 36 S. W. (Ark.) 575; *Hatch* v. *State*, 144 Ala. 50, 40 So. 113; *Hawthorne* v. *State*, 58 Miss. 778, 789; *Bishop* v. *State*, 62 Miss. 289; *German* v. *U. S.*, 120 Fed. 666; *State of Nevada* v. *McCluer*, 5 Nev. 110; *People* v. *Willett*, 36 Hun. (N. Y.) 500; *Boyd* v. *State*, 136 Ga. 340, 71 S. E. 416; *Cowherd* v. *State*, 6 Okla. Cr. 708, 120 Pac. 1021; *Courtney* v. *State*, 12 Okla. Cr. 169, 152 Pac. 1134; *Carter* v. *State*, 12 Okla. Cr. 164, 152 Pac. 1132; *Nichols et al.* v. *State*, 8 Okla. Cr. 550, 135 Pac. 1071; *Merriweather* v. *State*, 53 Okla. Cr. 420, 12 P. (2d) 707; *State v. Montifoire*, 95 Vt. 508, 116 Atl. 77; *State v. Lundhigh*, 30 Idaho 365, 164 Pac. 690; *State* v. *Milosevich*, 119 Ore. 404, 249 Pac. 625; *State* v. *Radick*, 119 Ore. 408, 249 Pac. 626; *State* v. *McGhee*, 135 S. E. (S. C.) 59; *Fraccaro* v. *State*, 189 Wis. 428, 207 N. W. 687; *State v. Wilkerson*, 164 N. C. 431, 79 S. E. 888; *Hale* v. *Commonwealth*, 165 Va. 808, 183 S. E. 180.